# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-01-00270-CV

**J. M. Lairsen, Jr./Stanley Slutzky, Trustee for the Longitudinal Trust, Appellants**

**v.**

**Stanley Slutzky, Trustee for the Longitudinal Trust/J. M. Lairsen, Jr., Appellees**

---

**FROM THE DISTRICT COURT OF TRAVIS COUNTY, 201ST JUDICIAL DISTRICT
NO. 98-01233, HONORABLE C. W. DUNCAN, JR., JUDGE PRESIDING**

---

The Longitudinal Trust (the ATrust@) commenced this fraud and breach of contract action against J. M. Lairsen, Jr., following the Trust=s foreclosure and sale of property it financed and sold to Lairsen. Following a jury trial, both parties appeal. Lairsen contends that (1) the court erred by failing to impose usury penalties; (2) the judgment did not conform to the jury=s verdict, and the court erred in determining the deficiency due under the terms of the real estate lien note at issue as well as Lairsen=s portion of personal liability; (3) the court erred in awarding attorney=s fees to the Trust; and (4) the court erred in failing to award Lairsen his attorney=s fees. The Trust also perfected an appeal and contends that there was insufficient evidence to support the jury=s finding that $510,000 was the fair market value of the property on the date of the foreclosure, and that the court erred in determining the amount of the deficiency due under the terms of the real estate lien note.

## Factual and Procedural Background

This lawsuit arises from a dispute between neighbors. Lairsen owns property with a view of Lake Travis. The Trust owned property across the street from Lairsen. When Lairsen began building a two-story house on his property, the Trust sued him and sought an injunction. The Trust contended that Lairsen≈s construction would violate the subdivision≈s restrictive covenants, which prohibit two-story houses. The district court temporarily enjoined Lairsen from continuing construction on the house. After negotiating, Lairsen and the Trust resolved the dispute and executed an agreement that provided Lairsen would purchase the Trust≈s property. Based on their agreement, the Trust moved to dismiss the lawsuit, and on February 24, 1997, the court dismissed the Trust≈s lawsuit with prejudice. On March 14, 1997, the parties executed an Aagreement of sale and purchase and settlement agreement.@ Their agreement provided that the closing of the sale of the property to Lairsen would occur 120 days after the signing of the agreement and the dismissal with prejudice of the lawsuit. Rather than wait 120 days, the parties agreed to an earlier closing date. On April 15, 1997, Lairsen paid the Trust $2000, the parties executed a deed of trust, and Lairsen, individually, signed a real estate lien note (the ANote@) in the principal amount of $598,000 payable to the Trust. The Note, prepared by Lairsen≈s attorney, provided for interest of eight percent per annum on the unpaid principal balance. The terms of payment were set forth on the first page of the Note:

**Terms of Payment (principal and interest)**:

The principal of this Note is due and payable on or before April 15, 2002, and interest only is payable monthly as it accrues on or before the 15th of every month beginning May 15, 1997.

Further, the Note provided that if the Note were given to an attorney for collection or enforcement, or if it were collected or enforced through any judicial proceeding, then Lairsen would pay the Trust=s costs including reasonable attorney=s fees and court costs. The Note also contained a clause limiting Lairsen=s personal liability, which provided the following, A[N]otwithstanding any provision in this Note to the contrary, [Lairsen] shall have personal liability *only* for the top twenty-five (25%) percent of the declining balance of the Note.@

Lairsen made no payments. On July 8, the Trust sent Lairsen a letter stating,

You are delinquent in making payments on the your [sic] promissory note dated April 15, 1997. At this time you have made no payments. This letter constitutes a demand for payment and a placing in default. Should you fail to make proper payment within twenty (20) days, the Longitudinal Trust will take all action required to enforce all of its rights under the note and Deed of Trust.

On July 24, Lairsen responded with a letter to the trustee, stating,

[Lairsen was] shocked to read that [the Note], in fact, provide[d] for monthly interest only payments commencing on May 15, 1997.

As you will recall, at the mediation which occurred in February of 1997, it was agreed that the lawsuit would be settled and dismissed and a purchase contract would be executed with a closing deferred 120 days after both the lawsuit would be dismissed and the Agreement of Sale and Purchase and Settlement Agreement was signed. The Agreement was signed on March 19, 1997. The lawsuit was dismissed on March 28, 1997.[1]

---

[1] In his letter, Lairsen misstated the date the lawsuit was dismissed. The lawsuit was dismissed on February 24, 1997.

3

The purpose for the 120 day deferred closing was to give me time to develop a re-use plan for the property. When the closing was moved up by Agreement to April 15, 1997, the Note was to have been changed to allow for it to be interest free for the first 120 days and thereafter monthly interest only payments were to commence. That is what I thought our agreement was; that is what I thought I signed. Obviously, it is not. What the lawyers did with our mediated agreement, I do not know. I am prepared to honor the Agreement you and I had which would commence interest only payments on August 15, 1997, and payment of principal upon maturity on April 15, 2002.

If this is not acceptable to you, I am willing to rescind the Purchase Contract and reconvey the property to you. I will also agree to pay your closing costs in connection with the April 15, 1997 closing.

Lairsen never made any payments. When Lairsen did not make an August payment, the Trust on September 16, 1997, sent Lairsen a Notice of Acceleration, accelerated the Note, and demanded full payment of the Note. After hearing nothing from Lairsen, the Trust bought the property at foreclosure on November 4 for $420,000.

On December 19, 1997, the Trust sent Lairsen a demand letter instructing him to contact the Trust=s attorney for the amount owing after foreclosure. Lairsen did not respond to the letter and did not pay anything. On February 4, 1998, the Trust commenced this lawsuit against Lairsen. The Trust alleged that Lairsen breached his promise to pay the Trust under the terms of the Note, defaulted in his obligations under the Note, failed to make any payments on the Note, and failed to cure his default. The Trust contended that because he breached the terms of the Note, the Trust was entitled to recover the outstanding balance of the Note, including principal and interest, plus taxes and other damages. In its petition, the Trust

**4**

acknowledged that Lairsen was personally liable under the terms of the Note only for the top twenty-five percent of the declining balance and because he failed to make any payments on the Note he was personally liable for $150,000. Additionally, the Trust alleged that Lairsen=s personal liability on the Note should not be reduced by the foreclosure sale proceeds. Alternatively, the Trust claimed that the personal liability limitation provision in the Note was ambiguous, but the provision should be construed against Lairsen since his attorney drafted the Note. Further, the Trust contended that, because it demanded payment and Lairsen refused to pay as well as failed to make an offer to pay any amount, it was entitled to recover its attorney=s fees from Lairsen pursuant to the Texas Civil Practice and Remedies Code sections 38.001-.005. *See* Tex. Civ. Prac. & Rem. Code Ann. '' 38.001-.005 (West 1997). Additionally, the Trust alleged a cause of action for fraud in a real estate transaction. Specifically, the Trust contended that Lairsen made material, false representations when he agreed to make payments on the Note because he never intended to fulfill his obligation to pay under the terms of the Note. *See* Tex. Bus. & Com. Code Ann. art. 27.01(a) (West 1987). Finally, the Trust sought exemplary damages based on the fraud allegation.

Lairsen responded and generally denied the Trust=s claims. Additionally, Lairsen contended that the fair market value of the property exceeded the amount the property sold for at the foreclosure sale, and that he was, therefore, entitled to a statutory offset. *See* Tex. Prop. Code Ann. ' 51.003 (West 1995).

**5**

Lairsen also pleaded the affirmative defense of usury. Lairsen=s usury contention was that because the Trust claimed he was not entitled to a credit for the $420,000 received at the foreclosure sale, the Trust was seeking to recover from him Aamounts far in excess of the legal rate of interest allowable in@ the State. Finally, Lairsen sought to recover his attorney=s fees.

The trial court submitted eight questions to the jury, which determined the following: (1) the fair market value of the property as of the foreclosure date of November 4, 1997, was $510,000; (2) the parties to the Note intended that Lairsen=s personal liability *would* be reduced by the proceeds of a foreclosure sale; (3) Lairsen did not commit fraud against the Trust; (4) $79,086, would fairly compensate the Trust for any damages that related to the amount due and owing on the Note after reduction by the foreclosure proceeds, $8247 was the reasonable cost incurred by the Trust in selling the property to Lairsen, and the Trust incurred $26,650 in selling the property to the buyer after foreclosure; (5) the Trust=s reasonable attorney=s fees were $34,562 for preparation and trial, $5000 for an appeal, and $5000 for a petition to the Texas Supreme Court; and finally, (6) Lairsen=s reasonable attorney=s fees, were $47,165[2] for preparation and trial, $5000 for an appeal, and $5000 for a petition to the Texas Supreme Court.

---

[2] Lairsen concedes on appeal that apparently the jury transposed the numbers when it wrote $74,165 as the amount they found to be his reasonable attorney=s fees.

6

The Trust moved to disregard the jury=s verdict. The Trust argued that the jury=s finding as to the amount due and owing on the Note after reduction by the foreclosure proceeds was improper as the sum of $79,086 was unsupported by the evidence; that the trial court should disregard the finding related to Lairsen=s attorney=s fees as there was no statutory or common law basis for such an award; that Lairsen=s claim of usury had no merit because the demand letter did not state a sum certain and only requested payment in accordance with the terms of the Note; Lairsen failed to present competent evidence of the fair market value of the property; and the court should award the Trust the direct and consequential damages found by the jury related to the sale of the property to Lairsen, $8247, and the real estate sales commission paid on the property, $26,650.

Presented with somewhat confusing facts, issues, and contentions, the trial court rendered judgment following the jury=s verdict. Taking into account the verdict as well as additional figures provided to the court by the parties after trial, the trial court determined that Lairsen was liable to the Trust for $43,819.44[3] plus attorney=s fees. Lairsen filed a motion to modify the judgment. In his post judgment motion Lairsen contended (1) that the trial court erred in calculating the deficiency

---

[3] Both parties agree that the trial court arrived at this number based on a document submitted by the Trust along with a proposed judgment; however, the trial court made no findings as to his damage calculation. The document reflects the following calculation: the amount due on the Note on November 4, 1997 was $79,086; Lairsen=s personal liability, twenty-five percent portion was $19,771.50, plus the costs of sale, $8,247, plus taxes, $5,781.44, for a total of $33,799.94; prejudgment interest of $10,019.50, for a total sum of $43,819.44.

7

and should have used the jury=s finding of fair market value, $510,000, to determine the deficiency and his portion of liability; (2) that the Trust was not entitled to recover its attorney=s fees because its demand for payment was excessive, the amount Lairsen owed under the terms of the Note could not be determined until the jury found the fair market value of the property, and the Trust did not prevail in the lawsuit; (3) the Trust was not entitled to recover prejudgment interest because the demand for payment was excessive and Lairsen never had an opportunity to tender the just amount due; (4) the court erred in allowing the Trust to recover the costs of sale, $8,247, because this sum was a double recovery; (5) the court erred in including in the award to the Trust $5,781.44 for recovery of property taxes; (6) the court erred in failing to award Lairsen his attorney=s fees; and (7) the Trust committed usury, and the court erred in failing to assess usury penalties against the Trust. Both parties appeal.

## Discussion

On appeal, Lairsen complains (1) the trial court should have determined that the Trust committed usury; (2) the trial court=s determinations of the deficiency and Lairsen=s personal liability were erroneous; (3) that the judgment against him exceeded the contractual limitation of liability provided in the Note; (4) the trial court erred in awarding the Trust attorney=s fees and prejudgment interest because the Trust=s demand letter was an excessive demand for payment; and finally

**8**

(5) that the trial court erred in failing to award Lairsen his attorney=s fees. The Trust contends on appeal that there was no competent evidence of the fair market value of the property and that the court erred in determining the deficiency on the Note.

### *Lairsen=s usury claim*

Lairsen contends in his first issue that the court erred by failing to impose usury penalties. Lairsen contends that the Trust violated the usury laws when, following the foreclosure and sale, the Trust sent him the December 19 letter and demanded that he pay the entire amount of the deficiency despite the fact that the Note expressly limited his personal liability to twenty-five percent of the declining balance. Lairsen argued that because the Trust violated the usury laws it should forfeit the debt including principal and interest.

There were no issues regarding Lairsen=s usury claim presented to the jury. Further on appeal, neither party provides any basis for reviewing the failure of the trial court to award any recovery on the usury claim. In any event, the Trust=s December 19 demand letter provided the

following:

Demand is hereby made for the entire balance of the deficiency on said Note, along with accrued interest on the Note, costs of collection, any late charges, and attorney=s fees as provided for therein. Information regarding the amount due under the Note may be obtained by contacting . . . .

If payment is not received by January 5, 1998, [the] Trust will execute all its rights under the law to obtain a judgment for the full amount due and owing to the [Trust].

The letter demanded payment of the deficiency that was unpaid as of that date as well as the accrued interest but only to the extent provided for in the Note. Lairsen does not argue that the Note is usurious. The Note contains a savings clause which provides, AInterest on the debt evidenced by this Note shall not exceed the maximum amount of nonusurious interest that may be contracted for, taken, reserved, charged or received under law. . . .@ Savings clauses are construed to defeat an interpretation of a contract that would violate usury laws. *Pentico v. Mad-Wayler, Inc.*, 964 S.W.2d 708, 714 (Tex. App.CCorpus Christi 1998, pet. denied). Because Lairsen did not complain that the Note was usurious and as the demand letter incorporated the terms of the Note and only demanded payment of the amount then due under the Note, we conclude that the demand letter was not a usurious charge. We overrule Lairsen=s first issue.

### *Issues related to the deficiency*

Both parties raise issues on appeal related to determining the amount of the deficiency due under the terms of the Note and Lairsen=s portion of personal liability. Although the parties do not agree about how the court should have calculated the deficiency, both contend that the court erred in basing the deficiency calculation on the jury=s finding that the amount due and owing on the Note on the date of the foreclosure sale after reduction by foreclosure proceeds was $79,086.

The parties= deficiency issues revolve around a provision in the Texas Property Code providing that if the fair market value of the real property is greater

than the price paid for the property at the foreclosure sale, the person against whom a deficiency is sought is entitled to an offset against the deficiency in the amount by which the fair market value exceeds the foreclosure sale price. Tex. Prop. Code Ann. ' 51.003(c) (West 1995); *see Moore v. Bank Midwest N.A.*, 39 S.W.3d 395, 399 (Tex. App.CHouston [1st Dist.] 2001, pet. denied); *Lester v. First Am. Bank*, 866 S.W.2d 361, 362 (Tex. App.CWaco 1993, writ denied). Further, if no party requests a determination of fair market value or if such request is made and no competent evidence of fair market value is introduced, the sale price at the foreclosure sale shall be used to compute the deficiency. Tex. Prop. Code Ann. ' 51.003(c). Competent evidence of fair market value may include, but is not limited to, expert opinion testimony, comparable sales, and anticipated marketing time and holding costs. *Id.* ' 51.003(b).

### *Challenge to the jury=s finding of fair market value*

First, we address the Trust=s contention that the jury=s finding that the property=s fair market value was $510,000 on the date of foreclosure Awas not supported by competent evidence.@ Specifically, the Trust contends that Lairsen=s two witnesses, Camille Abbott and Bill Hale, provided insufficient evidence of the fair market value of the property. The Trust contends that their testimony amounted to only a general knowledge of the real estate values in the area and that their testimony Afell far below what one would expect to see@ and, therefore, was not competent evidence of fair market value. The Trust contends that because there was no

**11**

competent evidence of fair market value, under section 51.003(c) the foreclosure sale price should have been used to calculate the deficiency on the Note.

In clarifying the issues, we note initially that the Trust does not complain on appeal about Abbott=s or Hale=s qualifications. Rather, the issue raised by the Trust on appeal is that the evidence presented by Abbott and Hale regarding fair market value was not competent evidence. We treat this issue as a complaint regarding the legal sufficiency of the evidence to support the jury=s finding of $510,000 as the fair market value of the property.

In reviewing a complaint that legally insufficient evidence supports a jury finding, the reviewing court considers all of the evidence in the light most favorable to the prevailing party and indulges every reasonable inference in that party=s favor. *Associated Indem. Corp. v. CAT Contracting, Inc.*, 964 S.W.2d 276, 285-86 (Tex. 1998). If there is any evidence of probative force, *i.e.*, more than a mere scintilla, to support the finding, the appellate court will overrule the point. *In re King=s Estate*, 244 S.W.2d 660, 661 (Tex. 1951); *Vannerson v. Vannerson*, 857 S.W.2d 659, 666 (Tex. App.CHouston [1st Dist.] 1993, writ denied). The evidence supporting a finding amounts to more than a scintilla if reasonable minds could arrive at the finding given the facts proved in the particular case. *Burroughs Wellcome Co. v. Crye*, 907 S.W.2d 497, 499 (Tex. 1995).

Section 51.003(b) lists several methods that may be considered in determining the fair market value of property. Tex. Prop. Code ' 51.003(b). The

statute provides the following methods:  (1) expert opinion testimony; (2) comparable sales; (3) anticipated marketing time and holding costs; (4) cost of sale; and (5) the necessity and amount of any discount to be applied to the future sales price or the cashflow generated by the property to arrive at a current fair market value. *Id.*  Further, the statute provides that the methods listed are not the exclusive means by which to establish the fair market value of property.  *Id.*  (Acompetent evidence may include, but is not limited to, the following@).

At trial, Abbott, a real estate agent, testified that she is an expert regarding property in the Lake Travis area as she has worked in the area since 1993. Further, she was familiar with the property at issue.  She sold the property across the street in late 1996 or early 1997 and sold the property adjacent and to the right of the property in 1994.  She also sold another piece of property about a half block away in 1999.  She testified that in her opinion and based on her experience in 1997 the property was worth $600,000 to $650,000.  It was her opinion that the actual sales price would also depend on whether the purchase was financed or was for cash and also how long the property had actually been available on the market.  Bill Hale also testified about the value of the property.  Hale has been a real estate investor in Travis County for thirty-five years and had investigated purchasing the particular property at issue for a group of real estate investors.  He testified that he made an offer of $725,000 for the property; however, the offer was conditioned on obtaining a zoning change for

the property, which he never obtained.  He testified that in his opinion, $725,000 was the fair market value of the property.

Abbott and Hale not only were knowledgeable about the real estate market in the Lake Travis area, they also had extensive knowledge about the particular property at issue.  Further, the Trustee, Stanley Slutzky, testified about offers to buy the property he received in 1998: (1) an offer was made in February 1998 for $600,000 with seller financing; (2) an offer was made in May 1998 for $420,000 with seller financing; (3) an offer was made in September 1998 for $400,000 with financing; (4) an offer was made in November 1988 for $379,900 with financing; (5) an offer was made in December 1988 for $389,500; and the sale closed in February 1999 for $438,000 with third party financing.  We hold that more than a scintilla of competent evidence supports the jury=s finding of a fair market value of $510,000 on the date of foreclosure.  We overrule the Trust=s second issue.

### Determining the deficiency and Lairsen=s portion of liability

In its first cross point, the Trust contends that the trial court erred in determining both the deficiency and Lairsen=s personal liability.  Lairsen raises this same contention as his second issue on appeal.  Both parties contend that the trial court based its deficiency calculation on the wrong jury answers.  We agree with both parties to the extent that the court miscalculated the deficiency and Lairsen=s personal liability.

**14**

The jury in answering question 5(a) determined that the amount due and owing on the Note on the date of foreclosure, after reduction by the foreclosure proceeds, was $79,086; the court determined this was the amount of the deficiency under the Note. The court found Lairsen=s personal liability under the Note to be twenty-five percent of the deficiency, or $19,771.50.

Both parties contend that the $79,086 sum is not supported by the evidence and that the court erred in determining the amount of the deficiency. After reviewing the record, we agree with the parties that there is no evidence to support the jury=s finding that $79,086 was the amount due and owing on the Note on the date of foreclosure after reduction by foreclosure proceeds. Additionally, as we have determined that the jury=s finding of fair market value was supported by the evidence, Lairsen was entitled to have the deficiency calculated by taking into account the fair market value finding rather than the foreclosure proceeds.

The parties diverge as to how the deficiency, as well as Lairsen=s personal liability, should be calculated. Lairsen contends that in calculating the deficiency as well as his personal liability under the Note only the principal amount should be considered, that is $598,000. Lairsen contends that the proper deficiency calculation is $598,000 less the fair market value, $510,000, for a deficiency of $88,000. Further, he contends that his personal liability under the terms of the Note is twenty-five percent of $88,000, that is $22,000. The Trust argues that regardless of whether section 51.003 of the property code and the fair market value as found by the

**15**

jury are used to determine the deficiency, or whether the foreclosure sale proceeds are used to determine the deficiency amount, both the principal amount *and* the accrued interest should be included in the determination because both are explicitly provided for in the Note. Thus, the Trust contends the proper deficiency calculation is $632,585.90[4] less the fair market value, $510,000, for a deficiency of $122,585.90. Further, the Trust argues that once the amount of the deficiency is determined, Lairsen is responsible for twenty-five percent of that amount, that is twenty-five percent of $122,585.90, which is $30,646.47. Thus, the difference in the parties= methods amounts to roughly $8600. We agree with the Trust=s calculation.

In determining the deficiency, the terms of the Note specifically provide for interest to accrue on the principal amount. Based on the explicit terms of the Note, and the jury=s fair market value finding, the deficiency and Lairsen=s

---

[4] This amount was computed at trial in the following manner. The amount due under the terms of the Note was $598,000 in principal plus interest at a rate of eight percent per annum. Under the terms of the Note, this interest rate continued from the date of closing until the date of acceleration, that is, from April 15, 1997 to September 15, 1997, which is 150 days and amounts to the sum of $19,660.50. After the Note was accelerated, the interest rate rose to eighteen percent, and this rate was charged from September 16, 1997 until the date the property sold at the foreclosure sale on November 4, 1997, which is forty-nine days and amounts to the sum of $14,925.40. The Trust therefore calculated the total amount owed on November 4 based upon the terms of the Note $632,585.90.

personal liability may be calculated in a straightforward manner. The amount due on the Note on the foreclosure date of November 4, 1997, was $632,585.90. Using the section 51.003 statutory fair market value as determined by the jury, $510,000, the deficiency owed on the foreclosure date was $122,585.90.

We must next determine Lairsen≥s personal liability. According to the Note, Lairsen≥s personal liability was limited to the top twenty-five percent of the declining balance. As Lairsen never made any payments, twenty-five percent of the declining balance as of November 4, 1997 was twenty-five percent of $122,585.90, which was $30,646.48. Both parties have urged this exact calculation at various points during the trial and on appeal; Lairsen proposed this resolution in his motion to modify the judgment, and the Trust proposed this calculation in the event the appellate court determined that the jury≥s finding of fair market value was supported by the evidence. Once the jury determined the fair market value of the property, the deficiency and Lairsen≥s personal liability requires only a straightforward mathematical calculation under the terms of the Note. We sustain portions of Lairsen≥s second issue and portions of the Trust≥s first issue.

**_Lairsen≥s complaint that judgment exceeds contractual limitation of liability_**

Lairsen also argues in a sub-issue that the amount of the judgment against him is excessive because based on the limitation of personal liability clause in the Note, $22,000 is the maximum amount of any judgment that relates to the Note that may be rendered against him. Although Lairsen raised several complaints about

**17**

the judgment in his post judgment motion to modify, he raises this particular complaint for the first time on appeal and fails to cite any authority related to this contention. We hold that Lairsen failed to properly preserve this complaint for appellate review. *See* Tex. R. App. P. 33.1(a). Further, we hold that because Lairsen failed to brief this issue adequately he waived any error regarding this contention. *See* Tex. R. App. P. 38.1(h); *see also In re Barr*, 13 S.W.3d 525, 555 (Tex. 1998); *Ebner v. First State Bank*, 27 S.W.3d 287, 303 n.28 (Tex. App.CAustin 2000, pet. denied). We overrule Lairsen=s contention that the amount of the judgment exceeds the contractual limitation of his personal liability.

### *Attorney=s fees*

Lairsen contends in his third issue that the court erred in awarding the Trust attorney=s fees incurred in prosecuting this lawsuit because the Trust=s December 19, 1997, demand letter was, as a matter of law, an excessive demand for payment. *See Findlay v. Cave*, 611 S.W.2d 57, 57 (Tex. 1981) (if creditor=s demand is excessive as matter of law then any liability for attorney=s fees expended thereafter is discharged). Lairsen contends that the Trust=s demand letter was an excessive demand because the Trust demanded Apayment of the whole debt@and did not take into account the limitation of liability clause in the Note, which provided that Lairsen would be personally liable for only twenty-five percent of the debt. Lairsen contends in his brief that by the letter, the Trust Aclearly indicated it would take nothing less

than payment of the whole debt although Lairsen was contractually obligated for only 25% of the debt.@

The Trust=s December 19, 1997, letter to Lairsen demanded payment of the balance of the deficiency, interest, and other charges, as provided in the Note. The letter did not demand a sum certain. Further, the letter provided that information regarding the amount due under the Note could be obtained by contacting the Trust=s attorney. The letter concluded by stating that if payment in full was not tendered by January 5, 1998, the Trust would execute its rights under the law to Aobtain a judgment for the full amount due and owing to the [Trust].@ In reviewing the record, we find no evidence to support Lairsen=s assertion in his brief that the Trust would take Anothing less than payment of the whole debt.@ The evidence reflects that after the Trust=s attorney sent the demand letter to Lairsen, the Trust=s attorney heard nothing further from Lairsen. We hold that Lairsen failed to show that as a matter of law the demand letter was an excessive demand for payment.[5] We overrule Lairsen=s third issue.

Lairsen contends in his fourth issue that the trial court erred in awarding attorney=s fees to the Trust because the Trust did not prevail on any of its claims. We disagree. The Trust sued Lairsen for breach of contract. The Trust, in its third original petition, pleaded for recovery of its attorney=s fees pursuant to section

---

[5] Also in conjunction with this issue, Lairsen contends that the trial court erred in awarding prejudgment interest to the Trust because Lairsen Anever had a chance to settle this case on the basis of 25% of the declining balance of the Note.@ In reviewing the record, we find no evidence to support this contention.

38.001 of the Civil Practice and Remedies Code. *See* Tex. Civ. Prac. & Rem. Code Ann. ' 38.001. Despite Lairsen=s contention, the trial court found in the Trust=s favor and ordered Lairsen to pay the Trust a portion of the deficiency. We find no abuse of discretion in the trial court=s decision to award the Trust attorney=s fees. We overrule Lairsen=s fourth issue.

Finally, Lairsen contends in his fifth issue that the trial court erred by failing to award him attorney=s fees. Lairsen contends that he is entitled to recover his attorney=s fees because the jury held against the Trust on its breach of contract claim. To the contrary, the trial court determined that the Trust prevailed on its breach of contract claim. There is no statutory or legal basis for the award of attorney=s fees to Lairsen. We overrule Lairsen=s fifth issue.

**Conclusion**

We sustain contentions by both parties that the trial court erred in determining the amount of the deficiency and Lairsen=s portion of liability regarding the debt. We reverse those portions of the judgment and remand them to the trial court for a redetermination of the deficiency amount and Lairsen=s portion of liability for the debt consistent with this opinion. Further, in light of the change that will occur in the amount of the judgment, we reverse the amount of prejudgment interest awarded to the Trust and remand that portion of the judgment to the trial court for recalculation of prejudgment interest. We affirm the remaining portions of the judgment.

_____

_____

Marilyn Aboussie, Chief Justice

Before Chief Justice Aboussie, Justices Kidd and Yeakel

Affirmed in Part; Reversed and Remanded in Part

Filed:   May 31, 2002

Publish