TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






ON MOTION FOR REHEARING








NO. 03-08-00427-CV






Eco Built, Inc. and Ed Travis, Appellants


v.


Mark Lulfs d/b/a Paperhanger Plus; Landmark Organization, L.P.;

and California Wholesale Material Supply, Inc. d/b/a Calply, Appellees






FROM THE DISTRICT COURT OF TRAVIS COUNTY, 126TH JUDICIAL DISTRICT

NO. D-1-GN-03-001970, HONORABLE LORA J. LIVINGSTON, JUDGE PRESIDING




M E M O R A N D U M O P I N I O N



 We withdraw our opinion and judgment dated August 13, 2010, and substitute the
following in their place. We overrule the motion for rehearing of Eco Built, Inc.

 Eco Built appeals a district court judgment awarding damages to appellee
Landmark Organization, L.P. for breach of a construction subcontract. In three issues, Eco Built
asserts that (1) the district court erred in disregarding jury findings that Landmark had breached
the contract and had thereby damaged Eco Built, (2) the evidence conclusively or by its great weight
and preponderance supported a larger amount of contract damages than the jury awarded to
Eco Built; and (3) no evidence supports the jury's finding as to the amount of Landmark's contract
damages or, in the alternative, the evidence conclusively establishes that Landmark waived breach
by Eco Built. Additionally, in a fourth issue, Eco Built and Yancey Ed Travis appeal a portion of
the judgment awarding Landmark damages from them, jointly and severally, based on a directed
verdict on claims that had been assigned to Landmark by one of Eco Built's suppliers. We will
modify and affirm the judgment in part and reverse and remand it in part.


BACKGROUND

 This appeal stems from disputes among contractors and suppliers who were involved
in the construction of the Hilton Austin building, the "convention center hotel" that is located next
to the Austin Convention Center. The project owner, Austin Convention Enterprises (ACE), an
entity formed by the City of Austin, contracted with appellee Landmark to oversee and manage
construction on ACE's behalf. Landmark's duties included hiring and supervising all subcontractors,
architects, and engineers. Landmark executed a subcontract with Eco Built on September 27, 2002
(made effective retroactively on August 12, 2002) whereby Eco Built was to provide all labor
and material necessary to fabricate and install the building's exterior wall system. In response to the
City of Austin's expressed desire to feature "eco-friendly" materials in the building, the project's
plans and specifications called for an exterior wall system that incorporated aerated autoclave
concrete (AAC), a material that weighs significantly less than ordinary concrete. The building's
outside wall or "skin" was to consist of several hundred large panels comprised of AAC attached to
a steel frame and finished with a stucco-like appearance. Prior to the Hilton Austin project, AAC
had never been used as panels on a high-rise building like the hotel.

 Simply described, Eco Built's scope of work under the subcontract entailed it
purchasing two-inch thick, several square-foot sized pieces of AAC, steel, and other component
materials and fabricating panels by building a steel frame, attaching two layers of the AAC piece
to the frame with screws, and applying two coats of a finishing treatment. Eco Built was then
responsible for having the prefabricated panels transported to the project site and installed on
the building with a crane. Eco Built was also responsible for supplying the AAC component to
another contractor who would install it into steel frames constructed on the building itself to
create "field applied" panels, and for applying the finish to the field-applied panels. Eco Built
subcontracted with appellee Mark Lulfs d/b/a Paperhanger Plus to assist it with fabricating, finishing,
transporting and installing the prefabricated panels from materials Eco Built supplied and also in
finishing field-applied panels.

 In consideration for the full performance of the work specified under Eco Built's
subcontract with Landmark, Landmark agreed to pay Eco Built a total sum of $3,975,000. However,
it was explicitly "provided that no payments are to be made unless [Eco Built's] rate of progress,
work done, and materials furnished are satisfactory to [Landmark] and has herein agreed upon."

 The subcontract provided for monthly progress payments to Eco Built--essentially
draws against the total contract amount--"covering the value of work completed to the satisfaction
of [ACE] during that month." Eco Built was required to submit applications for such payments
on which it would list materials it had purchased and work that had been performed during that
period. The work and materials were required to be categorized among several line-items in a
"schedule of values." To each line item was assigned a percentage of the total contract value, and
payment requests were to be charged against these values. The subcontract contemplated that
Landmark would incorporate information from Eco Built's application into its own requests for
payment from ACE. ACE would then inspect the work and materials to verify the information
provided in the payment requests, and either pay the request or withhold payment pending cure of
any deficiencies. Assuming Landmark was paid for the materials or work, it would pay Eco Built,
and Eco Built would in turn pay its suppliers and subcontractors. The subcontract contained a pay-when-paid clause--"PAYMENT TO [ECO BUILT] SHALL BE CONDITIONED ON PAYMENT
TO [LANDMARK] BY [ACE]."

 Also of note, the subcontract required Eco Built to furnish Landmark a treasury-rated
payment and performance bond covering one-hundred percent of Eco Built's contractual scope
of work. The bond was included in the total contract amount. Finally, the subcontract authorized
Landmark to terminate the contract at any time without cause upon written notice to Eco Built.

 Essentially three sets of key disputes arose concerning Eco Built's work on the
project. The first related to difficulty Eco Built encountered in obtaining the required bond. Despite
repeated assurances to Landmark that it would imminently obtain and furnish the bond, weeks
and then months elapsed without Eco Built satisfying the requirement. The second set of disputes
concerned the quality of Eco Built's work. Although Landmark had paid an initial progress payment
application for Eco Built's set-up costs (e.g., expenses for fabrication equipment, tools, and its
facility), complaints about cracked or misaligned panels prompted ACE to withhold payment to
Landmark for work and materials related to the panels, and Landmark in turn withheld payment from
Eco Built. The third set of disputes, related to the second, concerned Eco Built's failure to pay its
suppliers and subcontractors and the prospect that Landmark could ultimately be required to satisfy
those obligations. These outstanding obligations included payments due to Paperhanger Plus and
to California Wholesale Materials Supply, Inc. d/b/a Calply, which had supplied steel to Eco Built. On November 15, 2002, Landmark served notice to Eco Built that it was in default
under several provisions of the subcontract and demanded that the defaults be cured within 72 hours.
The claimed defaults included Eco Built's failure to provide a payment and performance bond;
to promptly amend and make good any defective materials and/or workmanship to the approval of
Landmark, ACE, and the project's architect; to pay its subcontractors and vendors; to provide a
written quality control and assistance program; and to obtain the approval of Landmark and
ACE before subcontracting its work. The notice further cited an incident earlier that day when
Eco Built "[n]otified Landmark . . . that due to your inability to make payroll you were stopping
work effective immediately." 

 Within a few days after this notice, however, Landmark and Eco Built agreed
to modify their subcontract into two agreements--(1) a $2,500,000 purchase contract whereby
Landmark would buy the prefabricated panels from Eco Built, and (2) a $1,475,000 subcontract
to cover Eco Built's erection and installation of the prefabricated panels and finishing of the
field applied panels. This modification had the effect of reducing the amount of bond Eco Built was
required to obtain, as only the second contract required a bond. Also, on November 21, Landmark
issued five checks covering materials and work for which Eco Built had requested payment in early
October. Each of these checks was made payable jointly to Eco Built and the vendor or third-tier
subcontractor who had provided the materials or work for which Eco Built had requested payment.
One such check was payable to Eco Built and Paperhanger Plus, another was payable to Eco Built
and Calply, and the remainder were each payable to Eco Built and other materials vendors.

 The disputes continued, however. On December 6, Landmark invoked its right
to terminate the subcontract and subsequently hired another subcontractor to complete fabrication
and installation of the exterior wall panels. As of the date of termination, Eco Built still had not
obtained a bond. By that date, Eco Built had submitted a total of four progress payment applications
covering materials and work provided through November 25. Landmark had not been paid by ACE
in connection with this work, nor had Landmark paid Eco Built anything beyond the initial progress
payment and the November 21 joint checks. In January 2003, Landmark issued an additional
joint check payable to Eco Built and the vendor of the AAC panels. Landmark subsequently issued
checks directly to two other Eco Built materials vendors and to two vendors of Paperhanger Plus.
Eco Built also submitted a fifth and final application for payment claiming additional work and
materials between November 26 and its December 6 termination, but Landmark made no payments
to Eco Built for such work and materials.

 Litigation ensued. Paperhanger Plus and Calply sued Eco Built, Landmark, and
Landmark's surety for amounts they claimed they were owed on the project, and Landmark and
Eco Built asserted claims against each other. Among other relief each requested, Landmark sought
to recover its costs of completing fabrication and installation of the wall panels and Eco Built sought
to recover sums it alleged Landmark owed it for work and materials it had provided under the
parties' subcontract. Calply also asserted a claim against appellant Yancey Ed Travis as a guarantor
of Eco Built's alleged outstanding payment obligations to Calply. Prior to trial, Landmark paid
Paperhanger Plus $100,001 to settle the subcontractor's claim against it, and Paperhanger Plus
assigned to Landmark its claims against Eco Built. Landmark also paid $65,000 to Calply in
August 2007. Over a month later, Calply executed what purported to be an assignment to Landmark
of its claims against Eco Built. Landmark also obtained partial summary judgment against Eco Built
on a promissory estoppel claim Eco Built had asserted. (1) 

 Landmark proceeded to trial on causes of action against Eco Built for breach of the
subcontract, fraud, and negligent misrepresentation. It also asserted the claims of Paperhanger Plus
and Calply against Eco Built as assignee. Eco Built, in turn, asserted its own claim against
Landmark for breach of the subcontract (specifically, Landmark's failure to pay what Eco Built
contended it was owed) and a claim that Landmark had converted Eco Built's tools and equipment
following termination. 

 During trial, Landmark moved for and obtained a directed verdict on the Calply
claims. Following presentation of evidence, the district court submitted each of the remaining
claims to the jury. The submissions of the parties' competing contract claims are significant to
our analysis. In Question 1, the district court inquired whether Eco Built had failed to comply with
the "Landmark/Eco Built Contract" (defined by reference to the original contract executed in
September 2002), and, in Question 3, whether Landmark had failed to comply with that contract. 
In both questions, the district court instructed the jury that a failure to comply must be "material" and
supplied a definition of materiality that generally tracked the factors identified in section 241 of the
Second Restatement of Contracts and applied by the Texas Supreme Court in Mustang Pipeline Co.,
Inc. v. Driver Pipeline Co., Inc., 134 S.W.3d 195, 199 (Tex. 2004) (per curiam). (2)

 In Question 2, the district court submitted--predicated on a finding that Eco Built
had failed to comply with the contract--an affirmative defense of waiver asserted by Eco Built. The
court instructed the jury that Eco Built's failure to comply was excused if Landmark "waived"
compliance, and that "waiver" is "an intentional surrender of a known right or intentional conduct
inconsistent with claiming that right." In Question 4, the court submitted--predicated on a finding
that Landmark had failed to comply with the contract--an equitable estoppel defense asserted by
Landmark. (3)

 In Question 5, the district court inquired--predicated on (1) findings that both
Eco Built and Landmark had failed to comply with the subcontract and (2) failures to find that either
party's breach had been excused--"Who failed to comply with the Landmark/Eco Built Contract
first?" Next, predicated on (1) a finding that Eco Built had breached and a failure to find it had
been excused, or (2) that Eco Built had breached first, Question 6 asked the jury to award
damages to Landmark, considering only "[t]he difference between the unpaid agreed price of the
Landmark/Eco Built Contract and the amount Landmark incurred to complete the scope of work
contained in the Landmark/Eco Built Contract." Similarly, Question 7--predicated on (1) a finding
that Landmark had breached first and a failure to find it had been excused or (2) that Landmark had
breached first--asked the jury to award damages to Eco Built, considering only "[t]he difference
between the amount paid by Landmark to Eco Built for work and materials provided and the amount
Landmark had agreed to pay Eco Built for that work and materials." 

 The jury found that both Eco Built and Landmark had failed to comply with
the subcontract, failed to find that either party's non-compliance had been excused, and that
Eco Built had breached first. Because the predicates for the contract damages submissions in
Questions 6 and 7 were each stated in the disjunctive, the jury answered both questions, awarding
Landmark $481,859.26 and Eco Built $62,503.85. The jury failed to find that Eco Built had
committed fraud against Landmark or that Eco Built had failed to comply with its agreement with
Paperhanger Plus, but did find that Eco Built had made a negligent misrepresentation on which
Landmark had justifiably relied. As with Landmark's contract damages submission, the negligent-misrepresentation damages submission instructed the jury to consider only "[t]he difference between
the unpaid agreed price of the Landmark/Eco Built Contract and the amount Landmark incurred to
complete the scope of work contained in the Landmark/Eco Built Contract," and the jury awarded
an identical amount--$481,859.26. On the other hand, the jury also found that Landmark had
converted Eco Built's property and awarded a total of $92,000 in damages on that claim.

 Landmark elected to recover on its contract claim. Based on the jury's findings,
the district court rendered judgment awarding Landmark a sum of $474,859.26--representing the
jury's award of $481,859.26 in contract damages, offset by Eco Built's $92,000 in conversion
damages, plus $85,000 in stipulated attorney's fees--plus prejudgment interest. The district court
did not award Eco Built any portion of the damages the jury had awarded for Landmark's breach of
the subcontract. Additionally, based on its directed verdict on the Calply claims, the district court
awarded Landmark, as assignee, a total of $63,505.97, plus prejudgment interest, jointly and
severally from Eco Built and Travis. The $63,505.97 figure represented $58,505.97 in damages plus
$5,000 in stipulated attorney's fees. 

 This appeal followed.


ANALYSISEco Built's contract claim

 In its first issue, Eco Built argues that the district court erred in disregarding the jury's
findings that Landmark had failed to comply with the subcontract and that Eco Built had been
damaged by the breach. The district court could have disregarded these findings only if they had
no support in the evidence or were immaterial. Southeastern Pipeline Co. v. Tichacek, 997 S.W.2d
166, 172 (Tex. 1999); Spencer v. Eagle Star, 876 S.W.2d 154, 157 (Tex. 1994); Billy Smith Enter.,
Inc. v. Hutchison Constr., Inc., 261 S.W.3d 370, 374 (Tex. App.--Austin 2008, pet. dism'd).
Although the record does not explicitly indicate the basis on which the district court disregarded
these findings, there is no indication that the court set aside these findings for lack of evidentiary
support. The record is instead consistent with the district court's having given these findings effect
but determining they were immaterial. See Billy Smith Enter., Inc., 261 S.W.3d at 372-74. (4)

 A jury question is immaterial "when it should not have been submitted, it calls for
a finding beyond the province of the jury, such as a question of law, or when it was properly
submitted but has been rendered immaterial by other findings." Id. (quoting Tichacek, 997 S.W.2d
at 172). On appeal, the parties join issue as to whether the jury's findings that Landmark had failed
to comply with the subcontract and that Eco Built had been damaged were rendered immaterial by
the jury's finding in Question 5 that Eco Built had breached before Landmark did. The parties'
contentions center on the implications of the "fundamental principle of contract law that when one
party commits a material breach of that contract, the other party is discharged or excused from
further performance." Mustang Pipeline Co., Inc., 134 S.W.3d at 196 (citing Hernandez v. Gulf
Group Lloyds, 875 S.W.2d 691, 692 (Tex. 1994)).

 Landmark argues that because the jury found in Question 5 that Eco Built's material
breach of the subcontract found in Question 1 occurred before Landmark's material breach through
failure to pay Eco Built, found in Question 3, Landmark was, as a matter of law, discharged from
any payment obligations under the subcontract that could have been the basis for the jury's findings
of breach in Question 3. However, the principle on which Landmark relies is subject to an important
caveat, as Eco Built observes. When a contracting party commits a material breach, the non-breaching party must elect between two courses of action, either continuing performance under the
contract or ceasing performance and terminating the contract. See Gupta v. Eastern Idaho Tumor
Inst., Inc., 140 S.W.3d 747, 756 (Tex. App.--Houston [14th Dist.] 2004, pet. denied); World Access
Telecomms. Group, Inc. v. Statewide Calling, Inc., No. 03-05-00173-CV, 2006 Tex. App. LEXIS
9061, at *18 (Tex. App.--Austin Oct. 17, 2006, no pet.) (mem. op.). If the non-breaching party
elects to treat the contract as continuing and insists the party in default continue its performance, the
previous breach constitutes no excuse for nonperformance on the part of the party not in default,
and the contract continues in force for the benefit of both parties. Hanks v. GAB Bus. Servs., Inc.,
644 S.W.2d 707, 708 (Tex. 1982); Gupta, 140 S.W.3d at 756.

 In this case, Landmark acknowledges that it continued to treat its subcontract with
Eco Built as continuing--and continued to demand performance from Eco Built--until Landmark
finally terminated the contract on December 6, 2002. Consequently, Landmark was not discharged
by virtue of Eco Built's material breach from any payment obligations to Eco Built that accrued
under the subcontract prior to termination. See Gupta, 140 S.W.3d at 756; World Access Telecomms.
Group, Inc., No. 03-05-00173-CV, 2006 Tex. App. LEXIS 9061, at *18. (5) The jury's findings that
Landmark breached the subcontract and that Eco Built was damaged were, therefore, not rendered
immaterial by the jury's finding in Question 5 that Eco Built had materially breached first.

 Landmark also urges that it had no obligations under the subcontract to make any
payment to Eco Built. It emphasizes evidence of Eco Built's "inferior work" and the pay-after-pay
clause in the subcontract. This amounts to a contention that the district court properly disregarded
the findings that Landmark had breached its payment obligations and that Eco Built had been
damaged because there is no evidence to support the finding of breach. This cannot be a basis for
affirming the judgment, however, because there is no indication that Landmark ever challenged the
jury's finding of breach for lack of evidentiary support or that the district court set it aside on that
basis. See Billy Smith Enter., Inc., 261 S.W.3d at 372-74; Tex. R. App. P. 33.1.

 Landmark also argues that its "failure to elect" to terminate the subcontract before
December 6, 2002, should not "excuse" Eco Built's material breach in failing to provide the bond
because Eco Built had "unclean hands in causing Landmark not to terminate earlier." This argument
seems to relate to Question 4, which submitted Landmark's affirmative defense of equitable estoppel
to its liability for breach of contract. The jury failed to find that Landmark's failure to comply with
the subcontract was excused by equitable estoppel. To the extent Landmark is arguing that the
evidence conclusively established that defense, we reject that contention, which, in any event,
Landmark did not preserve below. Alternatively, to the extent Landmark is attempting to rely on
some other equitable defense to its contract liability, it likewise failed to preserve that contention.
See Tex. R. App. P. 33.1. 

 Finding no basis in the evidence for the district court to have disregarded the jury's
findings that Landmark failed to comply with the subcontract and that Eco Built was damaged
thereby, we sustain Eco Built's first issue. In its second issue, Eco Built argues that the evidence
conclusively establishes that it incurred damages greater than the $62,503.85 the jury awarded it or
that the jury's failure to award greater damages was against the great weight and preponderance of
the evidence. Eco Built's arguments center on a damages calculation that Landmark presented at
trial to demonstrate what it viewed as the maximum amount Eco Built could recover if, as Eco Built
contended, Landmark had agreed to pay Eco Built for work and materials requested in Eco Built's
progress payment applications. However, we conclude that Eco Built did not preserve these
contentions in the district court.

 Eco Built did not object to Question 7 or otherwise raise its legal-sufficiency
contention prior to submission. Following the verdict, Eco Built filed two motions that were
authored and presented by Travis with consent of appellants' trial-level counsel and Landmark--a
motion for new trial and a "motion to set aside directed verdict and objection to entry of judgment."
Although we have attempted to construe the substance of these filings fairly, we cannot discern
that either complains of or seeks relief concerning the jury's damages finding in Question 7.
Consequently, we must overrule Eco Built's complaint regarding the legal sufficiency of the
evidence supporting the jury's answer on Question 7. See Tex. R. Civ. P. 324(b)(2), (3), (4); Tex. R.
App. P. 33.1; T.O. Stanley Boot Co. v. Bank of El Paso, 847 S.W.2d 218, 220 (Tex. 1992) (party
must preserve legal sufficiency point by: (1) moving for instructed verdict, (2) moving for judgment
notwithstanding verdict, (3) objecting to submission of jury question, (4) moving to disregard jury's
answer to vital fact question, or (5) moving for new trial). 


Landmark's contract claim 

 In addition to its arguments concerning the damages the jury awarded on its own
contract claim, Eco Built also challenges, in its second issue, the legal sufficiency of the evidence
supporting the jury's award of $481,859.26 in contract damages to Landmark. As previously noted,
Question 6 asked the jury to determine the difference between (1) "the unpaid agreed price of the
Landmark/Eco Built Contract" (i.e., the payments to Eco Built that Landmark saved by terminating
the subcontract and using another subcontractor); and (2) "the amount Landmark incurred to
complete the scope of work contained in the Landmark/Eco Built Contract" (i.e., Landmark's
costs to complete the work that Eco Built had originally contracted to perform). Eco Built argues
that Landmark failed to present competent evidence of its completion costs (the second component)
because while Landmark presented testimony that it incurred large out-of-pocket costs of
completion, it failed to present any evidence that these costs were reasonable and necessary. See
Mustang Pipeline, 134 S.W.3d at 200-01 ("The party seeking to recover the cost of completion in
a breach of contract case has the burden to prove that the damages sought are reasonable. Evidence
of the amounts charged and paid, standing alone, is no evidence that such payment was reasonable
and necessary.") (citing Dallas Ry. Terminal Co. v. Gossett, 294 S.W.2d 377, 382-83 (Tex. 1956)).
However, as was the case with Eco Built's contract damages, Eco Built did not preserve this legal-sufficiency complaint below. Tex. R. App. P. 33.1; T.O. Stanley Boot Co., 847 S.W.2d at 220. Eco Built also argues that Landmark failed to present legally sufficient evidence
that some of the components of its claimed costs of completion had been within the scope of
Eco Built's contract. In its new-trial motion, Eco Built complained that Question 6 was "incorrect"
in failing to instruct the jury to include several change orders Landmark had made to the Eco Built
contract in the calculation of the unpaid agreed price of the Landmark-Eco Built subcontract (the
first component of the calculation) while permitting the jury to determine Landmark's costs of
completion (the second component) based on a contractual scope of work that had incorporated
the same change orders. Landmark had disputed whether it had agreed to these change orders.
Eco Built argued that the total amount of its alleged change orders--$709,863.85--should be added
to "the unpaid agreed price of the Landmark/Eco Built Contract" before subtracting that figure from
Landmark's costs of completion to determine Landmark's damages. Assuming so, and even if
Eco Built's post-judgment challenge to the form of the Question 6 would have preserved this
complaint, this would not alone demonstrate that the evidence supporting the jury's award of
$481,859.26 to Landmark was legally insufficient. Landmark presented evidence that its costs of
completion were $4,918,755.73 and that the remaining unpaid balance of the Eco Built contract was
$3,219,838.47 (not including the alleged change orders), a difference of $1,698,920.26. Including
the alleged change orders in the unpaid balance of the Eco Built contract would reduce this
difference to $989,056.41--still well above the amount the jury awarded. We overrule Eco Built's
second issue.

 In its third issue, Eco Built argues in the alternative that conclusive evidence and a
statement by Landmark's counsel during closing argument established Eco Built's waiver defense
as a matter of law. (6) Eco Built points to evidence that in November 2002, Landmark and Eco Built
agreed to modify their original subcontract into two agreements, which had the effect of reducing
the amount Eco Built was required to bond from almost $4 million to $1,475,000. During closing
argument, Landmark's counsel emphasized that the parties had agreed to "split" the contract to aid
Eco Built in obtaining a bond. Eco Built further observes that the jury issue on its breach-of-contract
liability, Question 1, inquired whether it had "failed to comply with the Landmark/Eco Built
contract," and defined "Landmark/Eco Built contract" by reference to a copy of the original
subcontract. From this, Eco Built reasons that the evidence and counsel's statements conclusively
establish its waiver defense as to any breach-of-contract claims that were predicated on a bond
requirement in the subcontract. Even assuming this, however, Eco Built has not demonstrated error
in the judgment because the broad-form submission of Eco Built's breach-of-contract liability in
Question 1 enabled the jury to find breach based on contractual obligations other than the bond
requirement. We overrule Eco Built's third issue.


Directed verdict on Calply claims

 Finally, in the fourth issue presented on appeal, Eco Built and Travis jointly contend
that the district court erred in granting a directed verdict in Landmark's favor on the assigned Calply
claims and awarding $58,505.97 in damages jointly and severally against them. When reviewing
a directed verdict, we view the evidence in the light most favorable to the party against whom the
verdict was rendered and disregard all contrary evidence and inferences. See Szczepanik v. First S.
Trust Co., 883 S.W.2d 648, 649 (Tex. 1994); White v. Southwestern Bell Tel. Co., 651 S.W.2d 260,
262 (Tex. 1983). If there is any conflicting evidence of probative value that raises a material fact
issue on any theory of recovery, that issue should be submitted to the jury. Szczepanik, 883 S.W.2d
at 649; White, 651 S.W.2d at 262.

 Appellants argue that the district court erred in awarding damages based on the
directed verdict because the evidence presents a fact issue as to whether Landmark's payment of
$65,000 to Calply satisfied in whole or in part the claims that Calply purported to assign to
Landmark. Appellants emphasizes evidence that Landmark first made an electronic transfer of
$65,000 to Calply to "clear their account" on August 24, 2007, yet did not execute an assignment
until early October. And that assignment, appellants add, purported to assign "claims in existence
as of September 18, 2007," which was almost a month after Landmark's payment to Calply.

 More broadly, appellants have complained both here and below that the award
resulted in a double- or even triple-recovery for the same injury. (7) Although Landmark insists that
"the evidence is that the payment is to clear [Calply's] claim against Landmark" and that this claim
is distinct from Calply's claim against Eco Built, Landmark's own damages witness acknowledged
that the payment was to satisfy an obligation that Eco Built had incurred to Calply for steel Eco Built
had purchased. Landmark asserts, and appellants conceded in its post-verdict filings below, that the
amount of Eco Built's outstanding unpaid obligations to Calply had been $58,505.97. Thus, Calply
was paid in excess of this amount by Landmark to "clear their account," then purported to assign to
Landmark its right to recover the same $58,505.97 obligation from Eco Built.

 Appellants have requested reversal of the portion of the district court's judgment
awarding Landmark damages on the assigned Calply claims and remand for trial. We agree that
appellants have shown themselves entitled to this relief. Consequently, we sustain appellants'
fourth issue.


CONCLUSION

 We have concluded that the district court erred in disregarding the jury's findings
that Landmark had breached the Landmark-Eco Built subcontract and that Eco Built had been
damaged thereby. We have overruled Eco Built's issues pertaining to the amount of damages the
jury awarded to Eco Built and to Landmark. In light of these holdings, we modify the district court's
judgment to reduce Landmark's award of actual damages from Eco Built, $474,859.26, by the
amount of the jury's award of contract damages to Eco Built, $62,503.85, for a net total of
$412,355.41. As so modified, we affirm that portion of the judgment. Having modified the
damage award, we must also reverse the amount of prejudgment interest awarded to Landmark and
remand that portion of the cause to the trial court for recalculation of prejudgment interest. See
Lairsen v. Slutzky, 80 S.W.3d 121, 132 (Tex. App.--Austin 2002, pet. denied). We also reverse the
portion of the district court's judgment awarding Landmark, as assignee of Calply, $58,505.97, and
remand for further proceedings.



 __________________________________________

 Bob Pemberton, Justice

Before Chief Justice Jones, Justices Pemberton and Waldrop;

 Justice Waldrop not participating


Modified and, as Modified, Affirmed in part; Reversed and Remanded in part

on Motion for Rehearing


Filed: September 17, 2010


1. Early in the litigation, Landmark's surety also obtained summary judgment, on limitation
grounds, on claims asserted against it by Eco Built.
2. Regarding materiality, the jury was instructed that the circumstances to consider in
determining whether a failure to comply is material include:


a. the extent to which the injured party will be deprived of the benefit which he
reasonably expected;


b. the extent to which the injured party can adequately be compensated for the
part of that of which he will be deprived;


c. the extent to which the party failing to perform or to offer to perform will
suffer forfeiture;


d. the likelihood that the party failing to perform or to offer to perform will cure
his failure, taking into account the circumstances indicating any reasonable
assurances.


See Mustang Pipeline Co., Inc. v. Driver Pipeline Co., Inc., 134 S.W.3d 195, 199 (Tex. 2004)
(per curiam) (quoting Restatement (Second) of Contracts § 241 (1981)).
3. Specifically, the jury was instructed that Landmark's failure to comply would be excused
if each to the following circumstances had occurred:


1. Eco Built


 a. by words or conduct made a false representation or concealed
material facts;


 b. with knowledge of the facts or with knowledge or information that
would lead a reasonable person to discover the facts; and



 c. with the intention that Landmark would rely on the false
representation or concealment in acting or deciding not to act; and


2. Landmark


 a. did not know and had no means of knowing the real facts; and


 b. relied to its detriment on the false representations or concealment of
material facts.


See Comm. on Pattern Jury Charges, State Bar of Tex., Texas Pattern Jury Charges: Business,
Consumer, Insurance & Employment PJC § 101.25 (2008).
4. Following the verdict, Landmark filed a one-page motion for entry of judgment that did
not mention the findings in question, but merely attached a form of judgment that is substantively
identical to the judgment that the district court ultimately signed. That judgment incorporated the
jury's verdict by reference and awarded damages to Landmark on its contract claim, but omitted any
mention of the jury findings that Landmark had breached and that Eco Built had been damaged.
Neither the judgment nor any other ruling reflects that the district court set aside these or other
findings.
5. Landmark's acknowledgment that the contract continued in effect until December 6, 2002,
obviates any potential issues with omitted or deemed findings regarding whether or when Landmark
elected to terminate the subcontract prior to that time. Nor could any such finding be deemed in
favor of Landmark, as there is no evidence that Landmark elected to terminate the subcontract before
December 6. See Tex. R. Civ. P. 279; Ramos v. Frito-Lay, Inc., 784 S.W.2d 667, 668 (Tex. 1990)
(elements omitted from a jury charge that constitute only part of theory of recovery may be deemed
found in support of judgment if no objection is made and they are supported by factually sufficient
evidence).
6. Eco Built raised this argument in its motion for new trial. Thus, while this argument was
preserved, Eco Built's remedy would be limited to a new trial. See Horrocks v. Texas Dep't of
Transp., 852 S.W.2d 498, 499 (Tex. 1993). 
7. Contrary to Landmark's assertions on appeal, Eco Built preserved this complaint by raising
it in its objection to entry of judgment.