Don K. HANKS, d/b/a Hanks Claims
Service, Petitioner,

v.

GAB BUSINESS SERVICES,
INC., Respondent.

No. C–1095.

Supreme Court of Texas.

Dec. 31, 1982.

Rehearing Denied Feb. 16, 1983.

Carr, Evans, Fouts & Hunt, Donald M. Hunt, Lubbock, for petitioner.

Jones, Trout, Flygare, Moody & Brown, Jack A. Flygare and Jeffrey B. Jones, Lubbock, for respondent.

SONDOCK, Justice.

This suit arose from an alleged breach of a contract between Petitioner, Don K. Hanks, d/b/a Hanks Claims Service ("Hanks") and GAB Business Services, Inc. ("GAB") for the sale of an insurance adjusting business. The trial court rendered judgment for GAB. The court of appeals affirmed. 626 S.W.2d 564. We reverse the judgments of the courts below and render judgment for Hanks.

In May of 1977, Hanks contracted with GAB for the sale of his insurance adjustment business. The contract specifically included accounts receivable, ninety-five items of office furniture, goodwill, and a five-year covenant not to compete. The contract price of $95,000 provided for payments of $28,000 at closing, $33,500 due one year from the date of closing, and the balance due two years from closing. In connection with the sales contract, Hanks signed an employment contract with GAB, which also contained a covenant not to compete.

Approximately one year later, after GAB had paid the $33,500 installment, a dispute between the parties arose and Hanks resigned his position with GAB. Hanks commenced competing with GAB in violation of the non-competition agreement. Hanks continued to compete until March of 1979, when he voluntarily ceased competition.

During the time that Hanks was competing, GAB filed suit seeking injunctive relief and attorneys' fees for Hanks' violation of the covenant not to compete. In July of 1979, after GAB failed to tender the last installment, which was then overdue, Hanks filed an amended answer and counterclaim for the final payment, exemplary damages, and attorneys' fees. Later, GAB filed an amended petition seeking damages in addition to injunctive relief and asking to be excused from the final installment.

In response to the special issues submitted at trial, the jury found that GAB had been damaged in the amount of $1,200 for the eight month period in which Hanks actively competed in violation of the non-competition agreement and $5,850 future damages for the remainder of the five-year covenant period. GAB moved for judgment, requesting the permanent injunction and excuse from paying the final installment, in addition to the award of damages and $6,000 stipulated attorneys' fees. At that time, the trial court required GAB to make an election between the jury award and the excuse remedy, whereupon GAB elected to be excused from making the final $33,500 payment. The trial court then entered judgment, excusing GAB from making the final installment, and awarding attorneys' fees on the contract.

The question presented by this case is: Did Hanks' breach of the covenant not to compete excuse GAB's obligation to pay the final installment due for the business purchased? The court of appeals applied the rule of *Morgan v. Singley*, 560 S.W.2d 746 (Tex.Civ.App.—Texarkana 1977, no writ) and held that GAB was excused from making the final payment. We do not agree.

■ A prerequisite to the remedy of excuse of performance is that covenants in a contract must be mutually dependent promises. *Morgan v. Singley, supra.* In the instant case, this rule does not apply because the covenant not to compete should properly be classified as an independent promise. "The rule is that 'when a covenant goes only to part of the consideration on both sides and a breach may be compensated for in damages, it is to be regarded as an independent covenant, unless this is contrary to the expressed intent of the parties.'" *World Broadcasting System, Inc. v. Eagle Broadcasting Co.*, 162 S.W.2d 463, 465 (Tex.Civ.App.—San Antonio 1942, writ dism'd) *citing* 17 C.J.S., Contracts, § 344, at 800. The covenant not to compete in the Hanks/GAB contract only goes to part of the contract. The contract covers numerous items and the parties had bargained for a value of $5,000 to be assigned to the covenant not to compete, although the value assigned was admittedly for tax reasons. Further, there is no express language in the contract that indicates the parties intended the covenants to be mutually dependent. As explained in *Landscape Design & Construction, Inc. v. Harold Thomas Excavating, Inc.*, 604 S.W.2d 374, 376 (Tex.Civ.App.—Dallas, 1980, writ ref'd n.r.e.), "A breach of a covenant which is part of a legally enforceable contract gives rise to a cause of action for damages rather than affecting the enforceability of the provisions of the agreement." *See Reinert v. Lawson,* 113 S.W.2d 293, 295 (Tex.Civ.App.—Waco 1938, no writ). In this case, Hanks' breach may be adequately compensated by damages.

■ Any right GAB had to partially rescind the contract when Hanks breached the covenant not to compete has been waived. A party who elects to treat a contract as continuing deprives himself of any excuse for ceasing performance on his own part. *See Board of Regents, University of Texas v. S & G Construction Co.*, 529 S.W.2d 90 (Tex.Civ.App.—Austin 1975, writ ref'd n.r.e.); *Houston Belt & Terminal Ry. Co. v. J. Weingarten, Inc.*, 421 S.W.2d 431 (Tex.Civ.App.—Houston [1st Dist.] 1967, writ ref'd n.r.e.). At all times during the dispute and subsequent litigation, GAB chose to treat the contract as continuing. GAB retained all the assets of the business and continued its operation. Moreover, GAB did not pursue its excuse remedy until it had already instituted action to enforce the contract, well over a year after Hanks' breach of the covenant not to compete.

In holding that GAB had not elected its remedy prior to judgment, the court of appeals relied on this Court's decision in *Bocanegra v. Aetna Life Ins. Co.,* 605 S.W.2d 848 (Tex.1980). The court reasoned that neither GAB's filing of the lawsuit nor its retention of the business operated as a "conclusive choice" that would create a "manifest injustice" within the meaning of the *Bocanegra* test. Similarly, the court held that GAB's actions did not waive its excuse remedy, reasoning that GAB's actions were only consistent with the closing of the contract and did not constitute "intentional inconsistent conduct." We disagree. At the time of Hanks' breach, GAB could have elected to partially rescind the contract. Because GAB retained the assets of the business and chose to treat the contract as continuing, it could not elect the excuse remedy prior to judgment.

Finally, Hanks argues that there is no evidence to support the jury's finding of $5,850 future damages for the remaining period of the five year covenant. The court of appeals did not reach this question because it held that GAB was excused from performance. We disagree with the trial court's judgment on this point. The bulk of GAB's evidence on future damages was excluded by the trial court. The remaining testimony consisted of speculation as to future losses. GAB only introduced records of claims and gross amounts rather than completed work or overhead figures necessary to compute future profits.

The judgments of the courts below are reversed and judgment is here rendered that Hanks recover the final installment with an offset for the $1,200 damages found by the jury in favor of GAB plus prejudgment interest from June 1, 1979, to date of judgment. In light of the fact that both parties prevailed on their respective actions under the contract, we render judgment that neither party recover attorneys' fees.

ROBERTSON, J., not sitting.