Richard HOLLANDER, Appellant–
Cross–Appellee,

v.

Sim S. CAPON, Appellee–
Cross–Appellant.

No. 01–91–00409–CV.

Court of Appeals of Texas,
Houston (1st Dist.).

April 15, 1993.

Rehearing Denied May 27, 1993.

Cheryle R. Johnston, Kevin H. George, Houston, for appellant-cross-appellee.

Charles E. Frost, Jr., Chamberlain, Hrdlicka, White, Williams & Martin, Houston, for appellee-cross-appellant.

Before SAM BASS, MIRABAL and O'CONNOR, JJ.

## OPINION

SAM BASS, Justice.

Hollander, the legal guardian of Capon's four children, brought suit to enforce a child support agreement. Capon counter-claimed for breach of contract. The jury awarded Hollander $99,671.59 in damages; $58,198 in attorney's fees; $10,000 for this appeal, $10,000 for appeal to the supreme court; and $10,000 if the supreme court granted writ of error. Since the jury found the agreement was breached on a date outside the four-year limitations period, the trial court reduced actual damages to $7,035, the damages the jury found to have accrued within the limitations period. The judge set prejudgment interest at six percent per annum and awarded attorney's fees.

We affirm.

Rita and Sim Capon were divorced on December 4, 1964, and Rita secured custody of their four children. In 1974, Rita was killed in an automobile accident. Hollander, Rita's brother, became the children's legal guardian. In March of 1974, Capon and Hollander entered into a support agreement, under which Capon would pay support of $87.50 per child, per week, until each child turned 21 or was otherwise emancipated. Capon agreed to pay the full cost of a college education, provided he was financially able to do so. Hollander agreed to encourage the children to maintain a healthy and positive relationship with their father.

Capon's payments were very sporadic. Hollander obtained a judgment for over $4000 for unpaid child support. On April 1, 1979, after moving to Texas, Capon executed a confession of judgment, agreeing to make a $750 payment every six months until the judgment was paid off. Further, he acknowledged his obligation under the 1974 agreement.

Capon's payments continued to be sporadic. On April 21, 1980, Capon wrote Hollander, in which he stated:

Enclosed are Two (2) money orders totaling $750.00, the amount due on April 21, 1980, against the special release arrangement. The next payment is due October 1980.

Presently I owe you for approximately 8 weeks of support money. I expect to pay you up to the current day the first week in May 1980, thus keeping up to date.

The payments continued to be sporadic. On March 8, 1983, eight days after the youngest child turned 21, Capon sent Hollander his final payment on the agreement.

In Capon's second cross-point, he asserts the trial court erred by refusing to permit him to file an amended pleading within seven days of the trial date. In this pleading, he attempted to raise the affirmative defense of breach of contract.

The Rules of Civil Procedure provide:

Parties may amend their pleadings ... by filing such pleas with the clerk at such time as not to operate as a surprise to the opposite party; provided, that any pleadings ... offered for filing within seven days of the date of trial ... shall be filed only after leave of the judge is obtained, which leave shall be granted by the judge unless there is a showing that such filing will operate as a surprise to the opposite party.

TEX.R.CIV.P. 63.

The language of the rule makes it clear that without a showing of surprise, the trial court must grant leave for a party to file the amendments when requested within seven days of trial. *Greenhalgh v.*

*Service Lloyds Ins. Co.,* 787 S.W.2d 938, 941 (Tex.1990). A party's right to amend under rule 63 is subject only to the opposing party's right to show surprise. *Id.; Hardin v. Hardin,* 597 S.W.2d 347, 349 (Tex.1980). The trial court's refusal was in violation of rule 63 and was error.

■ Capon attempted to raise "breach of contract" as an affirmative defense for the first time just before trial. Capon had earlier timely filed a counterclaim seeking damages for breach of contract. Not every breach of contract rises to the level of an affirmative defense. In order for a breach to constitute a bar to the other party's right to recover, it must be a breach of a mutually dependent covenant. *Hanks v. GAB Business Servs.,* 644 S.W.2d 707, 708 (Tex.1982). In *Hanks,* the seller's breach of a covenant not to compete did not bar the sellers's right to collect the purchase price for the sale of the business. *Id.* The supreme court reasoned that the sales contract covered numerous items, and the covenant not to compete only went to part of the contract. *Id.* The covenant not to compete was held to be an "independent promise," rather than a "mutually dependent promise," and therefore its breach did not excuse the buyer's duty to pay the purchase price for the business. *Id.*

■ It is uncontested that Hollander provided the children with care, sustenance, housing, and education, and, in return, Capon agreed to pay child support. The "breach of contract" Capon attempted to allege as an affirmative defense was that Hollander failed to encourage a healthy and positive relationship between the children and Capon.

The March 1, 1974, agreement between Capon, the natural father of the four children, and Hollander, the children's maternal uncle and legal guardian, provides in relevant part:

3. Guardian shall provide Children a home, residence and place to live in all respects equal to members of Guardian's own natural family, and Guardian shall provide for the reasonable needs, necessities and care of the Children as long as each Child shall so desire, but Guardian shall have no obligation hereunder with respect to any Child upon such Child's attaining of age 21 years.

4. Father shall pay to Guardian on behalf of the Children the sum of $350 per week, allocated at $87.50 per week for each Child, for their support and maintenance which shall be all inclusive, including but not limited to medical and dental care. Said payments shall continue with respect to each of the Children until such time as each Child attains the age of 21 years, dies, marries, enters the military service or otherwise becomes emancipated, whichever shall sooner occur. It is understood, however, that merely attaining the age of majority if that be less than 21 years shall not be deemed "emancipation" for the purposes hereof. Notwithstanding the foregoing, if any Child of the Children [sic] shall be in full time attendance at a full time school, college or university, Father at his option may pay the sum allocated to such Child directly to the Child during the period of time said Child is not actually in residence with Guardian.

5. It is the intention and agreement of the parties that payments by Father to Guardian shall be payable subject to and conditioned upon a Child's continuing residence and domicile with Guardian and provided further that such Child is not otherwise emancipated.

. . . .

8. [Further], Father agrees, provided he is financially able to do so, to pay the full cost of college education for each Child, which cost would include tuition, room, board, books and fees. The determination as to Father's financial ability shall, however, be solely Father's.

9. Father shall have the right to visit with Children at reasonable times and on reasonable notice. The Guardian will encourage Children to maintain a healthy and positive relationship with Father and shall encourage such relationship and visitation with Father.

Capon, the natural father, entered into a written agreement to pay a certain amount per month in child support to Hollander,

the legal guardian of the children, who housed, fed, educated, and took care of the children. If Hollander failed to "encourage the children to maintain a healthy and positive relationship" with Capon, perhaps Capon could recover damages for Hollander's failure to perform as agreed, but Capon would not be relieved of his contractual support obligations. *See Hanks*, 644 S.W.2d at 708.

Therefore, the trial court's error in not permitting the amendment of Capon's answer was harmless.

Capon's second cross-point is overruled.

In Hollander's first and second points of error, he claims the evidence is both legally and factually insufficient to support the jury finding that the support agreement was breached on April 21, 1980. He preserved these points of error in a motion for new trial. *See Steves Sash & Door Co. v. Ceco Corp.*, 751 S.W.2d 473, 477 (Tex.1988).

In reviewing legal insufficiency points of error, this Court will consider only the evidence and inferences, when viewed in their most favorable light, that tend to support the finding, and will disregard all evidence and inferences to the contrary. *Davis v. City of San Antonio*, 752 S.W.2d 518, 522 (Tex.1988). If there is any evidence of probative force to support the finding, the point must be overruled and the finding upheld. *Sherman v. First Nat'l Bank*, 760 S.W.2d 240, 242 (Tex.1988).

In reviewing factual insufficiency points, we will first examine all the evidence. *Lofton v. Texas Brine Corp.*, 720 S.W.2d 804, 805 (Tex.1986). Having considered and weighed all of the evidence, we will set aside the verdict only if the evidence is so weak or the finding is so against the great weight and preponderance of the evidence that it is clearly wrong and unjust. *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex.1986). This Court cannot substitute its opinion for that of the trier of fact and determine that it would reach a different conclusion. *Glockzin v. Rhea*, 760 S.W.2d 665, 666 (Tex.App.—Houston [1st Dist.] 1988, writ denied).

The jury found that Capon acknowledged the 1974 agreement in the 1979 agreement.

The jury found that, after this acknowledgment, Capon breached the 1974 agreement on April 21, 1980. The only evidence adduced to that date is a letter from Capon to Hollander that he is behind on his support payments and intends to catch up soon. We must determine whether that letter provided legally and factually sufficient evidence to support the jury's finding.

 The 1974 agreement provided for weekly payments of $87.50 per child. When recovery is sought on an obligation payable in installments, the statute of limitations runs against each installment from the time it becomes due. *Gabriel v. Alhabbal*, 618 S.W.2d 894, 897 (Tex.Civ.App.—Houston [1st Dist.] 1981, writ ref'd n.r.e.); *Western Oil Fields, Inc. v. Pennzoil United, Inc.*, 421 F.2d 387, 390 (5th Cir.1970). Further, an action on a contract does not accrue, so as to begin running the period of limitations, until the contract has been breached. *Jackson v. J.R. Neatherlin Corp.*, 557 S.W.2d 327, 329 (Tex.Civ.App.—Houston [1st Dist.] 1977, writ ref'd n.r.e.). Reading these two cases together, an installment agreement is breached each time a payment is missed.

 Capon's letter of April 21, 1980, states he was eight weeks behind in support payments at that time. The statute of limitations on each of those payments began to run at the time the payment became due. The record does not reveal that Capon failed to pay an installment on April 21, 1980. Thus, the evidence does not support the jury's finding that the contract was breached on that date. April 21, 1980, is the date upon which Capon acknowledged he was in breach, which is meaningless for purposes of the statute of limitations. We find the evidence both legally and factually insufficient to support the finding that the agreement was breached on April 21, 1980.

However, the statute of limitations on a cause of action to enforce a debt is four years. Tex.Civ.Prac. & Rem.Code Ann. § 16.004(a)(3) (Vernon 1986). The trial court allowed Hollander to recover on those debts that had become payable within

four years of the filing of his suit, a proper application of the rule. *See Gabriel*, 618 S.W.2d at 897. The jury finding, although in error, did not cause the rendition of an improper judgment in this case. Therefore, the error is harmless, not requiring reversal. TEX.R.APP.P. 81(b)(1).

Hollander's first and second points of error are overruled.

█ In Hollander's third point of error, he claims the trial court incorrectly applied the four-year statute of limitations provided by TEX.CIV.PRAC. & REM.CODE ANN. § 16.-004(a)(3). He offers four alternatives to the application of the four-year limitations period.

Hollander first argues that the 10–year limitations period provided by TEX.FAM. CODE ANN. § 14.41 (Vernon 1986) should have been applied. He grounds this assertion in the fact that he is suing for child support payments. However, Hollander ignores the fact that section 14.41 is part of the statutory provisions to enforce a child support order by a family court. *See* TEX. FAM.CODE ANN. § 14.30 (Vernon 1986). Indeed, the subchapter containing section 14.41 is entitled "Enforcement of Court Orders for Child Support and Possession of and Access to a Child."

Hollander's cause of action was to enforce a contract. He did not plead, nor did he introduce evidence, that there was any court order awarding child support that he was seeking to enforce. Hollander cites no authority for the proposition that we can apply the limitations period of section 14.41 to a contract for child support. His contention is without merit.

Next, Hollander claims the rules of conflicts of laws require the application of the New York statute of limitations, six years, rather then the Texas statute. He asserts the "most significant relationship" test set out in *Duncan v. Cessna Aircraft Co.*, 665 S.W.2d 414, 421 (Tex.1984), requires the application of New York law.

█ Specifically, *Duncan* provides "in all choice of law cases, except those contract cases in which the parties have agreed to a valid choice of law clause, the law of the state with the most significant relationship to the particular *substantive issue* will be applied to resolve that issue." *Id.* (emphasis added). The statute of limitations is a procedural issue. If the action is barred by the statute of limitations of the forum court in which the lawsuit is pending, no action can be maintained even if the action is not barred in the state where the cause of action arose. *See Evers v. Powell*, 238 F.Supp. 787, 788–89 (S.D.Tex.1964), *aff'd*, 342 F.2d 46 (5th Cir. 1965). This claim is without merit.

Hollander claims the principles of waiver or estoppel should have been applied to preclude Capon's assertion of the statute of limitations defense. He did not plead this defense nor present it to the jury. He cannot raise it here for the first time.

Finally, Hollander claims that public policy requires the application of the longest possible statute of limitations, citing TEX. FAM.CODE ANN. § 14.71(c) (Vernon 1986), which states:

> The Court shall apply the statute of limitations for maintaining an action on arrearages of support payments of either the local law of this state or of the state which issued the support order entered under this subchapter, whichever is larger.

Hollander ignores the fact that the purpose of the subdivision of the Family Code under which this section is included is to set guidelines for the enforcement of court-ordered support. The provisions of the statute are not applicable to this case.

Hollander's third point of error is overruled.

█ In his fourth point of error, Hollander claims the trial court erred in awarding prejudgment interest at six percent per annum rather than 10 percent per annum. In the absence of an agreement regarding interest, recovery of prejudgment interest on contracts is limited to six percent per annum when those contracts "provide the conditions upon which liability depends and ... fix 'a measure by which the sum payable can be ascertained with reasonable certainty.'" *Perry Roofing Co. v. Olcott*,

744 S.W.2d 929, 930 (Tex.1988); *see* TEX. REV.CIV.STAT.ANN. § 5069–1.03 (Vernon 1987). If the sum payable is not ascertainable from the contract, then "prejudgment interest accrues at the prevailing rate that exists on the date judgment is rendered, but in no event less than ten percent" per annum. *Winograd v. Willis*, 789 S.W.2d 307, 312 (Tex.App.—Houston [14th Dist.] 1990, writ denied). This Court must determine first whether the contract provides the conditions on which liability depends; and if so, whether it fixes a measure by which to ascertain the sum payable with reasonable certainty. *See Wheat v. American Title Ins. Co.*, 751 S.W.2d 943, 945 (Tex.App.—Houston [1st Dist.] 1988, no writ).

The agreement between Hollander and Capon provides Capon was to pay Hollander $87.50 per child, per week, until each child reached the age of 21 or was emancipated. Thus, we are able to determine the conditions on which liability depends. The contract fixes the measures for ascertaining the sum payable with reasonable certainty upon the breach or default. The parties knew the age of the children and the status of the children at the time of the breach or default. Therefore, the contract does fall within the provisions of section 5069–1.03. The prejudgment interest rate of six percent per annum was correct on the date judgment was rendered.

Hollander's fourth point of error is overruled.

In Capon's first cross-point, he alleges the attorney's fees awarded are unreasonable in view of the actual damages awarded. The reasonableness of attorney's fees is not "wholly dependent upon the amount of recovery." *Failing v. Equity Management Corp.*, 674 S.W.2d 906, 910 (Tex. App.—Houston [1st Dist.] 1984, no writ). In determining the reasonable value of an attorney's services, "the jury may take into consideration *the facts before them* in relation to services rendered as well as estimates of their value made by attorneys who testified." *Id.* Capon's counsel has not shown the evidence does not support the award by the jury of attorney's fees in this cause.

Capon's first cross-point is overruled.

We affirm the judgment of the trial court.

O'CONNOR, J., dissenting.

O'CONNOR, Justice, dissenting.

I disagree with the majority's resolution of points of error one and two. The majority sustains Hollander's points challenging the sufficiency of the evidence to support the jury finding that the agreement was breached on April 21, 1980. Then, instead of holding that Capon failed to carry his burden of proof that the statute of limitations had run, the majority supplies another date for limitations.

The jury found that Capon breached the 1974 agreement on April 21, 1980. That date appears in the record only in a letter from Capon to Hollander in which he states that he was behind on his support payments and he planned to catch up soon. In that letter Capon told Hollander:

Dick—

Enclosed are two (2) money orders totaling $750.00, the amount due on April 20, 1980 against the special release arrangement. The next payment is due October 1980.

Presently I owe you for approximately 8 weeks of support money. I expect to pay you up to the current day the first week in May 1980, thus keeping up to date.

After the April 21 letter, Capon continued to make sporadic payments.

Both the majority and I agree that the April 21, 1980, letter from Capon did not itself breach the agreement. The majority interprets the letter as an acknowledgment by Capon that he was already in breach of the agreement; I believe the letter is one more indication that Capon would continue to pay "as he was able." Capon, by continuing to make payments, albeit sporadically and not for the full amount, treated

the contract as continuing as long as his children were still dependent on Hollander.

I do not believe that Capon breached the agreement until March 8, 1983. On that date, eight days after the youngest children turned 21, Capon sent Hollander his final check and the following letter:

Dick—

Enclosed is my check No. 1054 in the amount of Dollars Five Thousand Two Hundred and Fifty ($5,250.00) in payment of the commitment to support Jon's and Josh's schooling and living expenses, all in accordance with my letters to you dated May 20, 1982 and August 3, 1982 (see attached photo copies).

After this payment I have no obligation to send you funds for supporting any of my children, and more specifically because of your refusal to elaborate on details as asked of you on numerous occasions.

Please note that Susan *was* my dependent for the calendar year of 1982 and will become my deduction for the tax year of 1983.

The defense of statute of limitations was Capon's and, as such, Capon was required to secure a jury finding on the statute of limitations. *Intermedics, Inc. v. Grady*, 683 S.W.2d 842, 845 (Tex.App.—Houston [1st Dist.] 1984, writ ref'd n.r.e.). The majority, after acknowledging that there is no evidence to support April 21, 1980, as the date the statute began to run, merely supplies one for Capon. The majority says that when April 21, 1980, fails as the date, that some date, four years before the suit was filed, must be the date the statute ran. The majority is willing to supply a date because it believes that Capon breached the contract continually, from the time he first failed to make a timely payment. I know of no authority that permits the appellate court to supply a date for the purposes of a statute of limitations.

In *Intermedics*, this Court held that if an agreement contemplates a continuing contract for performance, the limitations period does not usually begin until the contract is fully performed. *Intermedics*, 683

S.W.2d at 845. Under *Intermedics*, the statute of limitations did not begin to run until Capon sent the March 8, 1983, letter.

The disagreement between the majority and the dissent can be traced to our different interpretations of the contract. The majority considers the contract as one for periodic payments. Relying on *Gabriel v. Alhabbal*, 618 S.W.2d 894, 897 (Tex.App.—Houston [1st Dist.] 1981, writ ref'd n.r.e.), the majority holds that failure to make any one payment was a breach that triggered the statute of limitations. I disagree that the contract was simply a contract that required periodic payments. The contract not only required Capon to make weekly payments, it also required him to pay the full cost of a college education for each child, provided he was financially able to do so. Only until the end of the contract would the parties know the cost of the children's college education, and only then would the parties know if Capon was "financially able to do so."

On this record, I believe that the statute began to run on March 8, 1983, when Capon told Hollander that he would not make any other payments he owed for his children's support.

I would sustain Hollander's points of error one and two.