# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## ON MOTION FOR REHEARING

## NO. 03-08-00427-CV

**Eco Built, Inc. and Ed Travis, Appellants**

**v.**

**Mark Lulfs d/b/a Paperhanger Plus; Landmark Organization, L.P.;
and California Wholesale Material Supply, Inc. d/b/a Calply, Appellees**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 126TH JUDICIAL DISTRICT
### NO. D-1-GN-03-001970, HONORABLE LORA J. LIVINGSTON, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

We withdraw our opinion and judgment dated August 13, 2010, and substitute the following in their place. We overrule the motion for rehearing of Eco Built, Inc.

Eco Built appeals a district court judgment awarding damages to appellee Landmark Organization, L.P. for breach of a construction subcontract. In three issues, Eco Built asserts that (1) the district court erred in disregarding jury findings that Landmark had breached the contract and had thereby damaged Eco Built, (2) the evidence conclusively or by its great weight and preponderance supported a larger amount of contract damages than the jury awarded to Eco Built; and (3) no evidence supports the jury's finding as to the amount of Landmark's contract damages or, in the alternative, the evidence conclusively establishes that Landmark waived breach

by Eco Built. Additionally, in a fourth issue, Eco Built and Yancey Ed Travis appeal a portion of the judgment awarding Landmark damages from them, jointly and severally, based on a directed verdict on claims that had been assigned to Landmark by one of Eco Built's suppliers. We will modify and affirm the judgment in part and reverse and remand it in part.

## BACKGROUND

This appeal stems from disputes among contractors and suppliers who were involved in the construction of the Hilton Austin building, the "convention center hotel" that is located next to the Austin Convention Center. The project owner, Austin Convention Enterprises (ACE), an entity formed by the City of Austin, contracted with appellee Landmark to oversee and manage construction on ACE's behalf. Landmark's duties included hiring and supervising all subcontractors, architects, and engineers. Landmark executed a subcontract with Eco Built on September 27, 2002 (made effective retroactively on August 12, 2002) whereby Eco Built was to provide all labor and material necessary to fabricate and install the building's exterior wall system. In response to the City of Austin's expressed desire to feature "eco-friendly" materials in the building, the project's plans and specifications called for an exterior wall system that incorporated aerated autoclave concrete (AAC), a material that weighs significantly less than ordinary concrete. The building's outside wall or "skin" was to consist of several hundred large panels comprised of AAC attached to a steel frame and finished with a stucco-like appearance. Prior to the Hilton Austin project, AAC had never been used as panels on a high-rise building like the hotel.

Simply described, Eco Built's scope of work under the subcontract entailed it purchasing two-inch thick, several square-foot sized pieces of AAC, steel, and other component

materials and fabricating panels by building a steel frame, attaching two layers of the AAC piece to the frame with screws, and applying two coats of a finishing treatment. Eco Built was then responsible for having the prefabricated panels transported to the project site and installed on the building with a crane. Eco Built was also responsible for supplying the AAC component to another contractor who would install it into steel frames constructed on the building itself to create "field applied" panels, and for applying the finish to the field-applied panels. Eco Built subcontracted with appellee Mark Lulfs d/b/a Paperhanger Plus to assist it with fabricating, finishing, transporting and installing the prefabricated panels from materials Eco Built supplied and also in finishing field-applied panels.

In consideration for the full performance of the work specified under Eco Built's subcontract with Landmark, Landmark agreed to pay Eco Built a total sum of $3,975,000. However, it was explicitly "provided that no payments are to be made unless [Eco Built's] rate of progress, work done, and materials furnished are satisfactory to [Landmark] and has herein agreed upon."

The subcontract provided for monthly progress payments to Eco Built—essentially draws against the total contract amount—"covering the value of work completed to the satisfaction of [ACE] during that month." Eco Built was required to submit applications for such payments on which it would list materials it had purchased and work that had been performed during that period. The work and materials were required to be categorized among several line-items in a "schedule of values." To each line item was assigned a percentage of the total contract value, and payment requests were to be charged against these values. The subcontract contemplated that Landmark would incorporate information from Eco Built's application into its own requests for

payment from ACE. ACE would then inspect the work and materials to verify the information provided in the payment requests, and either pay the request or withhold payment pending cure of any deficiencies. Assuming Landmark was paid for the materials or work, it would pay Eco Built, and Eco Built would in turn pay its suppliers and subcontractors. The subcontract contained a pay-when-paid clause—"PAYMENT TO [ECO BUILT] SHALL BE CONDITIONED ON PAYMENT TO [LANDMARK] BY [ACE]."

Also of note, the subcontract required Eco Built to furnish Landmark a treasury-rated payment and performance bond covering one-hundred percent of Eco Built's contractual scope of work. The bond was included in the total contract amount. Finally, the subcontract authorized Landmark to terminate the contract at any time without cause upon written notice to Eco Built.

Essentially three sets of key disputes arose concerning Eco Built's work on the project. The first related to difficulty Eco Built encountered in obtaining the required bond. Despite repeated assurances to Landmark that it would imminently obtain and furnish the bond, weeks and then months elapsed without Eco Built satisfying the requirement. The second set of disputes concerned the quality of Eco Built's work. Although Landmark had paid an initial progress payment application for Eco Built's set-up costs (e.g., expenses for fabrication equipment, tools, and its facility), complaints about cracked or misaligned panels prompted ACE to withhold payment to Landmark for work and materials related to the panels, and Landmark in turn withheld payment from Eco Built. The third set of disputes, related to the second, concerned Eco Built's failure to pay its suppliers and subcontractors and the prospect that Landmark could ultimately be required to satisfy those obligations. These outstanding obligations included payments due to Paperhanger Plus and to California Wholesale Materials Supply, Inc. d/b/a Calply, which had supplied steel to Eco Built.

4

On November 15, 2002, Landmark served notice to Eco Built that it was in default under several provisions of the subcontract and demanded that the defaults be cured within 72 hours. The claimed defaults included Eco Built's failure to provide a payment and performance bond; to promptly amend and make good any defective materials and/or workmanship to the approval of Landmark, ACE, and the project's architect; to pay its subcontractors and vendors; to provide a written quality control and assistance program; and to obtain the approval of Landmark and ACE before subcontracting its work. The notice further cited an incident earlier that day when Eco Built "[n]otified Landmark . . . that due to your inability to make payroll you were stopping work effective immediately."

Within a few days after this notice, however, Landmark and Eco Built agreed to modify their subcontract into two agreements—(1) a $2,500,000 purchase contract whereby Landmark would buy the prefabricated panels from Eco Built, and (2) a $1,475,000 subcontract to cover Eco Built's erection and installation of the prefabricated panels and finishing of the field applied panels. This modification had the effect of reducing the amount of bond Eco Built was required to obtain, as only the second contract required a bond. Also, on November 21, Landmark issued five checks covering materials and work for which Eco Built had requested payment in early October. Each of these checks was made payable jointly to Eco Built and the vendor or third-tier subcontractor who had provided the materials or work for which Eco Built had requested payment. One such check was payable to Eco Built and Paperhanger Plus, another was payable to Eco Built and Calply, and the remainder were each payable to Eco Built and other materials vendors.

The disputes continued, however. On December 6, Landmark invoked its right to terminate the subcontract and subsequently hired another subcontractor to complete fabrication and installation of the exterior wall panels. As of the date of termination, Eco Built still had not obtained a bond. By that date, Eco Built had submitted a total of four progress payment applications covering materials and work provided through November 25. Landmark had not been paid by ACE in connection with this work, nor had Landmark paid Eco Built anything beyond the initial progress payment and the November 21 joint checks. In January 2003, Landmark issued an additional joint check payable to Eco Built and the vendor of the AAC panels. Landmark subsequently issued checks directly to two other Eco Built materials vendors and to two vendors of Paperhanger Plus. Eco Built also submitted a fifth and final application for payment claiming additional work and materials between November 26 and its December 6 termination, but Landmark made no payments to Eco Built for such work and materials.

Litigation ensued. Paperhanger Plus and Calply sued Eco Built, Landmark, and Landmark's surety for amounts they claimed they were owed on the project, and Landmark and Eco Built asserted claims against each other. Among other relief each requested, Landmark sought to recover its costs of completing fabrication and installation of the wall panels and Eco Built sought to recover sums it alleged Landmark owed it for work and materials it had provided under the parties' subcontract. Calply also asserted a claim against appellant Yancey Ed Travis as a guarantor of Eco Built's alleged outstanding payment obligations to Calply. Prior to trial, Landmark paid Paperhanger Plus $100,001 to settle the subcontractor's claim against it, and Paperhanger Plus assigned to Landmark its claims against Eco Built. Landmark also paid $65,000 to Calply in

6

August 2007. Over a month later, Calply executed what purported to be an assignment to Landmark of its claims against Eco Built. Landmark also obtained partial summary judgment against Eco Built on a promissory estoppel claim Eco Built had asserted.[1]

Landmark proceeded to trial on causes of action against Eco Built for breach of the subcontract, fraud, and negligent misrepresentation. It also asserted the claims of Paperhanger Plus and Calply against Eco Built as assignee. Eco Built, in turn, asserted its own claim against Landmark for breach of the subcontract (specifically, Landmark's failure to pay what Eco Built contended it was owed) and a claim that Landmark had converted Eco Built's tools and equipment following termination.

During trial, Landmark moved for and obtained a directed verdict on the Calply claims. Following presentation of evidence, the district court submitted each of the remaining claims to the jury. The submissions of the parties' competing contract claims are significant to our analysis. In Question 1, the district court inquired whether Eco Built had failed to comply with the "Landmark/Eco Built Contract" (defined by reference to the original contract executed in September 2002), and, in Question 3, whether Landmark had failed to comply with that contract. In both questions, the district court instructed the jury that a failure to comply must be "material" and supplied a definition of materiality that generally tracked the factors identified in section 241 of the

---

[1] Early in the litigation, Landmark's surety also obtained summary judgment, on limitation grounds, on claims asserted against it by Eco Built.

7

Second Restatement of Contracts and applied by the Texas Supreme Court in *Mustang Pipeline Co., Inc. v. Driver Pipeline Co., Inc.*, 134 S.W.3d 195, 199 (Tex. 2004) (per curiam).[2]

In Question 2, the district court submitted—predicated on a finding that Eco Built had failed to comply with the contract—an affirmative defense of waiver asserted by Eco Built. The court instructed the jury that Eco Built's failure to comply was excused if Landmark "waived" compliance, and that "waiver" is "an intentional surrender of a known right or intentional conduct inconsistent with claiming that right." In Question 4, the court submitted—predicated on a finding that Landmark had failed to comply with the contract—an equitable estoppel defense asserted by Landmark.[3]

---

[2] Regarding materiality, the jury was instructed that the circumstances to consider in determining whether a failure to comply is material include:

a. the extent to which the injured party will be deprived of the benefit which he reasonably expected;

b. the extent to which the injured party can adequately be compensated for the part of that of which he will be deprived;

c. the extent to which the party failing to perform or to offer to perform will suffer forfeiture;

d. the likelihood that the party failing to perform or to offer to perform will cure his failure, taking into account the circumstances indicating any reasonable assurances.

*See Mustang Pipeline Co., Inc. v. Driver Pipeline Co., Inc.*, 134 S.W.3d 195, 199 (Tex. 2004) (per curiam) (quoting Restatement (Second) of Contracts § 241 (1981)).

[3] Specifically, the jury was instructed that Landmark's failure to comply would be excused if each to the following circumstances had occurred:

1. Eco Built

In Question 5, the district court inquired—predicated on (1) findings that both Eco Built and Landmark had failed to comply with the subcontract and (2) failures to find that either party's breach had been excused—"Who failed to comply with the Landmark/Eco Built Contract first?" Next, predicated on (1) a finding that Eco Built had breached and a failure to find it had been excused, *or* (2) that Eco Built had breached first, Question 6 asked the jury to award damages to Landmark, considering only "[t]he difference between the unpaid agreed price of the Landmark/Eco Built Contract and the amount Landmark incurred to complete the scope of work contained in the Landmark/Eco Built Contract." Similarly, Question 7—predicated on (1) a finding that Landmark had breached first and a failure to find it had been excused *or* (2) that Landmark had breached first—asked the jury to award damages to Eco Built, considering only "[t]he difference

---

    a.      by words or conduct made a false representation or concealed material facts;

    b.      with knowledge of the facts or with knowledge or information that would lead a reasonable person to discover the facts; and

    c.      with the intention that Landmark would rely on the false representation or concealment in acting or deciding not to act; and

2.    Landmark

    a.      did not know and had no means of knowing the real facts; and

    b.      relied to its detriment on the false representations or concealment of material facts.

*See* Comm. on Pattern Jury Charges, State Bar of Tex., Texas Pattern Jury Charges: Business, Consumer, Insurance & Employment PJC § 101.25 (2008).

between the amount paid by Landmark to Eco Built for work and materials provided and the amount Landmark had agreed to pay Eco Built for that work and materials."

The jury found that both Eco Built and Landmark had failed to comply with the subcontract, failed to find that either party's non-compliance had been excused, and that Eco Built had breached first. Because the predicates for the contract damages submissions in Questions 6 and 7 were each stated in the disjunctive, the jury answered both questions, awarding Landmark $481,859.26 and Eco Built $62,503.85. The jury failed to find that Eco Built had committed fraud against Landmark or that Eco Built had failed to comply with its agreement with Paperhanger Plus, but did find that Eco Built had made a negligent misrepresentation on which Landmark had justifiably relied. As with Landmark's contract damages submission, the negligent-misrepresentation damages submission instructed the jury to consider only "[t]he difference between the unpaid agreed price of the Landmark/Eco Built Contract and the amount Landmark incurred to complete the scope of work contained in the Landmark/Eco Built Contract," and the jury awarded an identical amount—$481,859.26. On the other hand, the jury also found that Landmark had converted Eco Built's property and awarded a total of $92,000 in damages on that claim.

Landmark elected to recover on its contract claim. Based on the jury's findings, the district court rendered judgment awarding Landmark a sum of $474,859.26—representing the jury's award of $481,859.26 in contract damages, offset by Eco Built's $92,000 in conversion damages, plus $85,000 in stipulated attorney's fees—plus prejudgment interest. The district court did not award Eco Built any portion of the damages the jury had awarded for Landmark's breach of the subcontract. Additionally, based on its directed verdict on the Calply claims, the district court

10

awarded Landmark, as assignee, a total of $63,505.97, plus prejudgment interest, jointly and severally from Eco Built and Travis. The $63,505.97 figure represented $58,505.97 in damages plus $5,000 in stipulated attorney's fees.

This appeal followed.

## ANALYSIS

**Eco Built's contract claim**

In its first issue, Eco Built argues that the district court erred in disregarding the jury's findings that Landmark had failed to comply with the subcontract and that Eco Built had been damaged by the breach. The district court could have disregarded these findings only if they had no support in the evidence or were immaterial. *Southeastern Pipeline Co. v. Tichacek*, 997 S.W.2d 166, 172 (Tex. 1999); *Spencer v. Eagle Star*, 876 S.W.2d 154, 157 (Tex. 1994); *Billy Smith Enter., Inc. v. Hutchison Constr., Inc.*, 261 S.W.3d 370, 374 (Tex. App.—Austin 2008, pet. dism'd). Although the record does not explicitly indicate the basis on which the district court disregarded these findings, there is no indication that the court set aside these findings for lack of evidentiary support. The record is instead consistent with the district court's having given these findings effect but determining they were immaterial. *See Billy Smith Enter., Inc.*, 261 S.W.3d at 372-74.[4]

---

[4] Following the verdict, Landmark filed a one-page motion for entry of judgment that did not mention the findings in question, but merely attached a form of judgment that is substantively identical to the judgment that the district court ultimately signed. That judgment incorporated the jury's verdict by reference and awarded damages to Landmark on its contract claim, but omitted any mention of the jury findings that Landmark had breached and that Eco Built had been damaged. Neither the judgment nor any other ruling reflects that the district court set aside these or other findings.

A jury question is immaterial "when it should not have been submitted, it calls for a finding beyond the province of the jury, such as a question of law, or when it was properly submitted but has been rendered immaterial by other findings." *Id.* (quoting *Tichacek*, 997 S.W.2d at 172). On appeal, the parties join issue as to whether the jury's findings that Landmark had failed to comply with the subcontract and that Eco Built had been damaged were rendered immaterial by the jury's finding in Question 5 that Eco Built had breached before Landmark did. The parties' contentions center on the implications of the "fundamental principle of contract law that when one party commits a material breach of that contract, the other party is discharged or excused from further performance." *Mustang Pipeline Co., Inc.*, 134 S.W.3d at 196 (citing *Hernandez v. Gulf Group Lloyds*, 875 S.W.2d 691, 692 (Tex. 1994)).

Landmark argues that because the jury found in Question 5 that Eco Built's material breach of the subcontract found in Question 1 occurred before Landmark's material breach through failure to pay Eco Built, found in Question 3, Landmark was, as a matter of law, discharged from any payment obligations under the subcontract that could have been the basis for the jury's findings of breach in Question 3. However, the principle on which Landmark relies is subject to an important caveat, as Eco Built observes. When a contracting party commits a material breach, the non-breaching party must elect between two courses of action, either continuing performance under the contract or ceasing performance and terminating the contract. *See Gupta v. Eastern Idaho Tumor Inst., Inc.*, 140 S.W.3d 747, 756 (Tex. App.—Houston [14th Dist.] 2004, pet. denied); *World Access Telecomms. Group, Inc. v. Statewide Calling, Inc.*, No. 03-05-00173-CV, 2006 Tex. App. LEXIS 9061, at *18 (Tex. App.—Austin Oct. 17, 2006, no pet.) (mem. op.). If the non-breaching party

12

elects to treat the contract as continuing and insists the party in default continue its performance, the previous breach constitutes no excuse for nonperformance on the part of the party not in default, and the contract continues in force for the benefit of both parties. *Hanks v. GAB Bus. Servs., Inc.*, 644 S.W.2d 707, 708 (Tex. 1982); *Gupta*, 140 S.W.3d at 756.

In this case, Landmark acknowledges that it continued to treat its subcontract with Eco Built as continuing—and continued to demand performance from Eco Built—until Landmark finally terminated the contract on December 6, 2002. Consequently, Landmark was not discharged by virtue of Eco Built's material breach from any payment obligations to Eco Built that accrued under the subcontract prior to termination. *See Gupta*, 140 S.W.3d at 756; *World Access Telecomms. Group, Inc.*, No. 03-05-00173-CV, 2006 Tex. App. LEXIS 9061, at *18.[5] The jury's findings that Landmark breached the subcontract and that Eco Built was damaged were, therefore, not rendered immaterial by the jury's finding in Question 5 that Eco Built had materially breached first.

Landmark also urges that it had no obligations under the subcontract to make any payment to Eco Built. It emphasizes evidence of Eco Built's "inferior work" and the pay-after-pay clause in the subcontract. This amounts to a contention that the district court properly disregarded the findings that Landmark had breached its payment obligations and that Eco Built had been

---

[5] Landmark's acknowledgment that the contract continued in effect until December 6, 2002, obviates any potential issues with omitted or deemed findings regarding whether or when Landmark elected to terminate the subcontract prior to that time. Nor could any such finding be deemed in favor of Landmark, as there is no evidence that Landmark elected to terminate the subcontract before December 6. *See* Tex. R. Civ. P. 279; *Ramos v. Frito-Lay, Inc.*, 784 S.W.2d 667, 668 (Tex. 1990) (elements omitted from a jury charge that constitute only part of theory of recovery may be deemed found in support of judgment if no objection is made and they are supported by factually sufficient evidence).

13

damaged because there is no evidence to support the finding of breach. This cannot be a basis for affirming the judgment, however, because there is no indication that Landmark ever challenged the jury's finding of breach for lack of evidentiary support or that the district court set it aside on that basis. *See Billy Smith Enter., Inc.*, 261 S.W.3d at 372-74; Tex. R. App. P. 33.1.

Landmark also argues that its "failure to elect" to terminate the subcontract before December 6, 2002, should not "excuse" Eco Built's material breach in failing to provide the bond because Eco Built had "unclean hands in causing Landmark not to terminate earlier." This argument seems to relate to Question 4, which submitted Landmark's affirmative defense of equitable estoppel to its liability for breach of contract. The jury failed to find that Landmark's failure to comply with the subcontract was excused by equitable estoppel. To the extent Landmark is arguing that the evidence conclusively established that defense, we reject that contention, which, in any event, Landmark did not preserve below. Alternatively, to the extent Landmark is attempting to rely on some other equitable defense to its contract liability, it likewise failed to preserve that contention. *See* Tex. R. App. P. 33.1.

Finding no basis in the evidence for the district court to have disregarded the jury's findings that Landmark failed to comply with the subcontract and that Eco Built was damaged thereby, we sustain Eco Built's first issue. In its second issue, Eco Built argues that the evidence conclusively establishes that it incurred damages greater than the $62,503.85 the jury awarded it or that the jury's failure to award greater damages was against the great weight and preponderance of the evidence. Eco Built's arguments center on a damages calculation that Landmark presented at trial to demonstrate what it viewed as the maximum amount Eco Built could recover if, as Eco Built

14

contended, Landmark had agreed to pay Eco Built for work and materials requested in Eco Built's progress payment applications. However, we conclude that Eco Built did not preserve these contentions in the district court.

Eco Built did not object to Question 7 or otherwise raise its legal-sufficiency contention prior to submission. Following the verdict, Eco Built filed two motions that were authored and presented by Travis with consent of appellants' trial-level counsel and Landmark—a motion for new trial and a "motion to set aside directed verdict and objection to entry of judgment." Although we have attempted to construe the substance of these filings fairly, we cannot discern that either complains of or seeks relief concerning the jury's damages finding in Question 7. Consequently, we must overrule Eco Built's complaint regarding the legal sufficiency of the evidence supporting the jury's answer on Question 7. *See* Tex. R. Civ. P. 324(b)(2), (3), (4); Tex. R. App. P. 33.1; *T.O. Stanley Boot Co. v. Bank of El Paso*, 847 S.W.2d 218, 220 (Tex. 1992) (party must preserve legal sufficiency point by: (1) moving for instructed verdict, (2) moving for judgment notwithstanding verdict, (3) objecting to submission of jury question, (4) moving to disregard jury's answer to vital fact question, or (5) moving for new trial).

**Landmark's contract claim**

In addition to its arguments concerning the damages the jury awarded on its own contract claim, Eco Built also challenges, in its second issue, the legal sufficiency of the evidence supporting the jury's award of $481,859.26 in contract damages to Landmark. As previously noted, Question 6 asked the jury to determine the difference between (1) "the unpaid agreed price of the Landmark/Eco Built Contract" (i.e., the payments to Eco Built that Landmark saved by terminating

15

the subcontract and using another subcontractor); and (2) "the amount Landmark incurred to complete the scope of work contained in the Landmark/Eco Built Contract" (i.e., Landmark's costs to complete the work that Eco Built had originally contracted to perform). Eco Built argues that Landmark failed to present competent evidence of its completion costs (the second component) because while Landmark presented testimony that it incurred large out-of-pocket costs of completion, it failed to present any evidence that these costs were reasonable and necessary. *See Mustang Pipeline*, 134 S.W.3d at 200-01 ("The party seeking to recover the cost of completion in a breach of contract case has the burden to prove that the damages sought are reasonable. Evidence of the amounts charged and paid, standing alone, is no evidence that such payment was reasonable and necessary.") (citing *Dallas Ry. Terminal Co. v. Gossett*, 294 S.W.2d 377, 382-83 (Tex. 1956)). However, as was the case with Eco Built's contract damages, Eco Built did not preserve this legal-sufficiency complaint below. Tex. R. App. P. 33.1; *T.O. Stanley Boot Co.*, 847 S.W.2d at 220.

Eco Built also argues that Landmark failed to present legally sufficient evidence that some of the components of its claimed costs of completion had been within the scope of Eco Built's contract. In its new-trial motion, Eco Built complained that Question 6 was "incorrect" in failing to instruct the jury to include several change orders Landmark had made to the Eco Built contract in the calculation of the unpaid agreed price of the Landmark-Eco Built subcontract (the first component of the calculation) while permitting the jury to determine Landmark's costs of completion (the second component) based on a contractual scope of work that had incorporated the same change orders. Landmark had disputed whether it had agreed to these change orders. Eco Built argued that the total amount of its alleged change orders—$709,863.85—should be added

16

to "the unpaid agreed price of the Landmark/Eco Built Contract" before subtracting that figure from Landmark's costs of completion to determine Landmark's damages. Assuming so, and even if Eco Built's post-judgment challenge to the form of the Question 6 would have preserved this complaint, this would not alone demonstrate that the evidence supporting the jury's award of $481,859.26 to Landmark was legally insufficient. Landmark presented evidence that its costs of completion were $4,918,755.73 and that the remaining unpaid balance of the Eco Built contract was $3,219,838.47 (not including the alleged change orders), a difference of $1,698,920.26. Including the alleged change orders in the unpaid balance of the Eco Built contract would reduce this difference to $989,056.41—still well above the amount the jury awarded. We overrule Eco Built's second issue.

In its third issue, Eco Built argues in the alternative that conclusive evidence and a statement by Landmark's counsel during closing argument established Eco Built's waiver defense as a matter of law.[6] Eco Built points to evidence that in November 2002, Landmark and Eco Built agreed to modify their original subcontract into two agreements, which had the effect of reducing the amount Eco Built was required to bond from almost $4 million to $1,475,000. During closing argument, Landmark's counsel emphasized that the parties had agreed to "split" the contract to aid Eco Built in obtaining a bond. Eco Built further observes that the jury issue on its breach-of-contract liability, Question 1, inquired whether it had "failed to comply with the Landmark/Eco Built contract," and defined "Landmark/Eco Built contract" by reference to a copy of the original

---

[6] Eco Built raised this argument in its motion for new trial. Thus, while this argument was preserved, Eco Built's remedy would be limited to a new trial. *See Horrocks v. Texas Dep't of Transp.*, 852 S.W.2d 498, 499 (Tex. 1993).

17

subcontract. From this, Eco Built reasons that the evidence and counsel's statements conclusively establish its waiver defense as to any breach-of-contract claims that were predicated on a bond requirement in the subcontract. Even assuming this, however, Eco Built has not demonstrated error in the judgment because the broad-form submission of Eco Built's breach-of-contract liability in Question 1 enabled the jury to find breach based on contractual obligations other than the bond requirement. We overrule Eco Built's third issue.

**Directed verdict on Calply claims**

Finally, in the fourth issue presented on appeal, Eco Built and Travis jointly contend that the district court erred in granting a directed verdict in Landmark's favor on the assigned Calply claims and awarding $58,505.97 in damages jointly and severally against them. When reviewing a directed verdict, we view the evidence in the light most favorable to the party against whom the verdict was rendered and disregard all contrary evidence and inferences. *See Szczepanik v. First S. Trust Co.*, 883 S.W.2d 648, 649 (Tex. 1994); *White v. Southwestern Bell Tel. Co.*, 651 S.W.2d 260, 262 (Tex. 1983). If there is any conflicting evidence of probative value that raises a material fact issue on any theory of recovery, that issue should be submitted to the jury. *Szczepanik*, 883 S.W.2d at 649; *White*, 651 S.W.2d at 262.

Appellants argue that the district court erred in awarding damages based on the directed verdict because the evidence presents a fact issue as to whether Landmark's payment of $65,000 to Calply satisfied in whole or in part the claims that Calply purported to assign to Landmark. Appellants emphasizes evidence that Landmark first made an electronic transfer of $65,000 to Calply to "clear their account" on August 24, 2007, yet did not execute an assignment

18

until early October. And that assignment, appellants add, purported to assign "claims in existence as of September 18, 2007," which was almost a month after Landmark's payment to Calply.

More broadly, appellants have complained both here and below that the award resulted in a double- or even triple-recovery for the same injury.[7] Although Landmark insists that "the evidence is that the payment is to clear [Calply's] claim against Landmark" and that this claim is distinct from Calply's claim against Eco Built, Landmark's own damages witness acknowledged that the payment was to satisfy an obligation that Eco Built had incurred to Calply for steel Eco Built had purchased. Landmark asserts, and appellants conceded in its post-verdict filings below, that the amount of Eco Built's outstanding unpaid obligations to Calply had been $58,505.97. Thus, Calply was paid in excess of this amount by Landmark to "clear their account," then purported to assign to Landmark its right to recover the same $58,505.97 obligation from Eco Built.

Appellants have requested reversal of the portion of the district court's judgment awarding Landmark damages on the assigned Calply claims and remand for trial. We agree that appellants have shown themselves entitled to this relief. Consequently, we sustain appellants' fourth issue.

### CONCLUSION

We have concluded that the district court erred in disregarding the jury's findings that Landmark had breached the Landmark-Eco Built subcontract and that Eco Built had been damaged thereby. We have overruled Eco Built's issues pertaining to the amount of damages the

---

[7] Contrary to Landmark's assertions on appeal, Eco Built preserved this complaint by raising it in its objection to entry of judgment.

jury awarded to Eco Built and to Landmark. In light of these holdings, we modify the district court's judgment to reduce Landmark's award of actual damages from Eco Built, $474,859.26, by the amount of the jury's award of contract damages to Eco Built, $62,503.85, for a net total of $412,355.41. As so modified, we affirm that portion of the judgment. Having modified the damage award, we must also reverse the amount of prejudgment interest awarded to Landmark and remand that portion of the cause to the trial court for recalculation of prejudgment interest. *See Lairsen v. Slutzky*, 80 S.W.3d 121, 132 (Tex. App.—Austin 2002, pet. denied). We also reverse the portion of the district court's judgment awarding Landmark, as assignee of Calply, $58,505.97, and remand for further proceedings.

_____

Bob Pemberton, Justice

Before Chief Justice Jones, Justices Pemberton and Waldrop;
    Justice Waldrop not participating

Modified and, as Modified, Affirmed in part; Reversed and Remanded in part
on Motion for Rehearing

Filed:   September 17, 2010

20