NO. 07-10-0118-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL B

OCTOBER 18, 2010

_____

ACE and DANA HAMM,

Appellants

v.

STEVE VAUGHN, individually and d/b/a VAUGHN CONSTRUCTION,

Appellee

_____

FROM THE 121st DISTRICT COURT OF TERRY COUNTY;

NO. 18258; HON. DAVID GLEASON, PRESIDING

_____

*Memorandum Opinion*

_____

Before QUINN, C.J., and CAMPBELL  and HANCOCK,  JJ.

Pending before this court is the appeal of Ace and Dana Hamm from a judgment denying them recovery against Steve Vaughn d/b/a Vaughn Construction and awarding Vaughn damages against the Hamms.  The latter had sued Vaughn to recover damages for his alleged failure to complete the construction of their home.  The default purportedly resulted in the Hamms suffering "economic and non-economic damages." Vaughn, in turn, sued the Hamms for breach of contract.  The jury rendered a verdict in favor of Vaughn, and the trial judge entered judgment based on that verdict.

The Hamms now question the legal and factual sufficiency of the evidence underlying that portion of the verdict finding that they breached first and that their breach was unexcused. We affirm the judgment.

According to evidence of record, the Hamms and Vaughn executed a written "bid" contract under which Vaughn agreed to construct them a home for $569,750. Though the parties had talked about it, Vaughn explicitly refused to execute a "cost-plus" agreement. Construction began in November of 2007, and proceeded without incident for several months. Then, in March of 2008, Ace demanded that Vaughn deliver to him the invoices of Vaughn's subcontractors and suppliers. Vaughn was told by Ace that the latter wanted to "know what . . . this job [was] costing" him. Vaughn then told Ace that he did not disclose his invoices on jobs performed under bid contracts but rather only on those done under cost plus agreements. To that, Ace responded with: ". . . if you don't show me your invoices, I'm going to let you go."

Though Vaughn disclosed to Ace the specification sheets containing an itemization of the "allowances" involved, Ace nonetheless persisted in his demand for invoices. So too did he inform Vaughn that "I got friends that can help me finish this home if you don't show me your invoices."

That the contract between the parties contained no clause requiring disclosure of the invoices went undisputed. Nor did anyone deny that Vaughn was contractually obligated to furnish the Hamms with a "disbursement statement" each time he requested a draw or payment. That statement was to contain the name and address of each subcontractor or supplier that the builder intended to pay with the requested funds. And, though it appears that Vaughn seldom if ever provided the Hamms such a

statement when he solicited a draw, Vaughn testified that the Hamms never requested one.

The motivation behind Ace's demand for invoices was the subject of debate. Ace suggested that he wanted to see if the subcontractors and suppliers were being paid. Yet, the invoices themselves did not show that. And, as previously mentioned, Ace never asked for a "disbursement statement" which would have identified those who were to be paid. Moreover, the construction was proceeding as contemplated, and the relationship between the parties was amicable until the invoices were demanded. Ace also acknowledged that he encountered no instance of Vaughn omitting to pay any supplier or subcontractor.

Nonetheless, Ace did complain to a third party that the job would have cost him a "million dollars" if he "had not run (Vaughn) off the job," though he cited no instance of any cost overrun. Indeed, Vaughn testified that under a bid contract, any overruns were his responsibility anyway; his customers were not charged for them. Ace also disclosed to a witness that he "wanted to see all of the invoices . . . to see if . . . Vaughn was charging him too much or having too much markup . . . ." Apparently, Ace thought Vaughn was only entitled to a markup of ten to fifteen percent despite having executed a bid, as opposed to a cost-plus contract. This same witness, who happened to be a lawyer, also informed Ace that irrespective of what the cost of construction actually was, Vaughn could only charge him the price specified in the contract.

As represented, Ace did bar Vaughn from completing the job because Vaughn refused to deliver his invoices. And, within four days of doing so, Ace had his own employees and subcontractors finishing the project; this incidentally contradicted his

3

own testimony that he waited several weeks before assuming the task. Additionally, Ace completed the construction at a cost which was approximately $40,000 less than the bid price he agreed to pay Vaughn. But, despite having saved money, he sued Vaughn for damages, fraud, and deceptive trade practices.

The law provides that a material breach of contract by one party relieves the other from performing. *PAJ, Inc. v. Hanover Ins. Co.,* 243 S.W.3d 630, 633 (Tex. 2008). Of course, the breach may be excused. *Hanks v. GAB Bus. Servs., Inc.,* 644 S.W.2d 707, 708 (Tex. 1982). And, if it is, then the non-breaching party must perform his obligations. *Id.*

Here, the jury found that both the Hamms and Vaughn "fail[ed] to comply with the agreement," that the Hamms failed to do so first, and that their failure was not excused but that of Vaughn was. These findings could be reasonably based upon the above recitation of the evidence. Indeed, a rational juror could reasonably infer from it that Ace cared not that he accepted a bid contract, that he agreed to pay a set price for the house, or that Vaughn provided no "disbursement statements" when seeking periodic payment. Jurors could also infer from the evidence that Ace did not actually care about whether the suppliers or subcontractors were being paid. Instead, they could have reasonably deduced that he simply opted not to pay the sum agreed to and instigated means to avoid that promise by unilaterally deriving some way to rid himself of Vaughn. Simply put, the jury was free to discredit the veracity of Ace's testimony given that he contradicted it himself at times and rejected his bona fides. After all, it heard about how Ace sued Vaughn for damages even though less was spent on completing the house than the sum he bound himself to pay. *Dunn v. Bank-Tec. South*, 134 S.W.3d 315, 324

4

(Tex. App.–Amarillo 2003, no pet.) (stating that jurors are free to choose who to believe and disbelieve). Finally, reasonable minds could also deduce that one party to a contract that illegitimately prevents another from performing materially breaches the accord. *Case Corp. v. Hi-Class Business Systems of America, Inc.,* 184 S.W.3d 760, 770 (Tex. App.–Dallas 2005, pet. denied) (stating that a party to a contract implicitly obligates himself not to interfere with the other's performance); *Mustang Pipeline Co. v. Driver Pipeline Co.,* 134 S.W.3d 195, 199 (Tex. 2004) (stating that materiality of a breach is determined by the extent to which the injured party will be deprived of the benefit reasonably expected, the extent to which the injured party can be adequately compensated for the benefit of which he was deprived, the extent to which the party failing to perform suffers forfeiture, the likelihood the party failing to perform will cure the failure, and the extent to which the behavior of the party failing to conform fails to comport with standards of good faith and fair dealing).

Given that some evidence supports each aspect of the jury's verdict being attacked, we cannot say that the record established, as a matter of law, that the Hamms did not materially breach the contract first or that their breach was excused. *Southwestern Bell Tel. Co. v. Garza,* 164 S.W.3d 607, 619 n.18 (Tex. 2004) (stating that a verdict is legally sufficient if the record contains some evidence to support it). And, the state of the entire record is not such that we could reasonably hold that those findings were in any way manifestly unjust or wrong. *James v. Mazuca & Assocs. v. Shumann,* 82 S.W.3d 90, 93 (Tex. App.–San Antonio 2002, pet. denied) (stating that a verdict is factually insufficient when it is manifestly unjust or wrong given the great weight of the evidence).

5

We overrule each issue and affirm the final judgment.


Per Curiam